**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, and ) | |
| STATE OF ILLINOIS, *ex rel.*, ) | |
| CLEVELAND A. TYSON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 02 C 6074 |
| v. ) | |
| ) | Judge David H. Coar |
| AMERIGROUP ILLINOIS, INC., *et al.*, ) | Magistrate Judge Cole |
| ) | |
| Defendants. ) | |

**MOTION OF NON-PARTY ILLINOIS DEPARTMENT OF**
**HEALTHCARE AND FAMILY SERVICES TO**
**QUASH A SUBPOENA FOR DOCUMENTS OR,**
**IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER**

NOW COMES the Illinois Department of Healthcare and Family Services, a non-party, by

and through its attorney, LISA MADIGAN, Attorney General of Illinois, and, pursuant to Fed. R.

Civ. P. 26 and 45, moves this Court for an order quashing a Subpoena for Documents or, in the

alternative, for a Protective Order, stating as follows:

1. The Illinois Department of Healthcare and Family Services (hereinafter "HFS") is not a

party to this action.

2. On or about July 29, 2005, Defendant Amerigroup of Illinois, Inc. (hereinafter "AMG" or

"Defendant") issued and served a Subpoena for Documents on HFS. A copy of this Subpoena is

attached as Exhibit A. The Subpoena commands that the documents identified in the Rider to

Subpoena be produced for inspection and copying at the office of Freeborn & Peters, counsel for

AMG, on August 12, 2005 at 10:00 a.m. The Rider to the Subpoena demonstrates that AMG is

seeking documents from HFS responsive to twelve categories seeking very broad and far-ranging

information concerning AMG, as well as four other Medicaid managed care organizations operating

now or in the past in Illinois. The Subpoena for Documents seeks production of these documents dating back from January 1, 1998 to the present.

3. Prior to the issuance of this Subpoena, and pursuant to Magistrate Judge Levin's ruling of May 3, 2005, (*see* Civil Docket 02 C 6074 at Document No. 190), counsel for AMG and counsel for HFS conferred in an attempt to agree to the parameters of a document request to accompany a Subpoena to HFS in an effort to define the types of documents HFS would be willing to produce to AMG. HFS' counsel, Karen Konieczny and John E. Huston, met with AMG's counsel, Jeffrey Dorman and Hillard Sterling, at the offices of Freeborn & Peters on Monday, July 25, 2005, at approximately 1:30 p.m. The parties left that meeting knowing that HFS' counsel would have to discuss the parameters of any document production with staff of HFS and that HFS' counsel would get back to AMG's counsel with HFS' position on the production. Before HFS' counsel could contact Mr. Dorman, the Subpoena attached as Exhibit A was served.

4. This Subpoena is the fifth subpoena from AMG for information from the non-party HFS. (On or about August 5, 2005, AMG served a Subpoena for Rule 30(b)(6) Deposition of HFS. That Subpoena for Deposition is the sixth subpoena from AMG to HFS and is the subject of a separate motion to quash.) In each instance, AMG served its subpoena on the non-party HFS with a fact discovery cut-off date looming in the near future. On or about March 8, 2005, AMG served a Subpoena for Documents upon the Illinois Department of Public Aid ("IDPA"), now known as the Illinois Department of Healthcare and Family Services ("HFS"), seeking 37 categories of documents. A copy of that Subpoena is attached as Exhibit B. On IDPA's motion, the Court entered an order quashing that Subpoena on March 29, 2005. *See* Civil Docket 02 C 6074 at Document No. 131. On or about March 31, 2005, AMG served a Subpoena for Deposition of Barry S. Maram, Director of then-IDPA and current Director of HFS. A copy of that Subpoena is attached as Exhibit C. The

2

court quashed that subpoena, on Director Maram's motion, on April 26, 2005. *See* Civil Docket 02 C 6074 at Document No. 176. On or about April 14, 2005, AMG served an Amended Subpoena for Documents on IDPA and a Subpoena for a Rule 30(b)(6) Deposition of IDPA. Both of these subpoenas were quashed on motion of IDPA by order entered May 3, 2005. *See* Civil Docket 02 C 6074 at Document No. 190. A copy of the Amended Subpoena for Documents is attached as Exhibit D and a copy of the Subpoena for Rule 30(b)(6) Deposition of IDPA is attached as Exhibit E. Simultaneously with these matters, AMG served a subpoena for documents on each of the non-party entities that contracted with IDPA to act as managed care organizations for the Medicaid population. Those subpoenas were likewise quashed. *See* Civil Docket 02 C 6074 at Document No. 168. On or about May 13, 2005, AMG appealed to the District Court for an order reversing all orders entered by the Magistrate that quashed all subpoenas issued to IDPA and the four Medicaid managed care organizations. The District Court took that matter under advisement. *See* Civil Docket for 02 C 6074 at Document Nos. 203, 205.

5. HFS moves to quash the current Subpoena, Exhibit A, in its entirety and objects to producing all the documents listed in the Rider, except categories No. 5 and No. 11, on three grounds: 1) the Subpoena is void because service was defective under the plain language of Rule 45(b)(1); 2) the documents AMG seeks from HFS are not relevant to this lawsuit; and 2) compliance with the Subpoena is unduly burdensome to a non-party to the litigation within the meaning of Rule 45(c)(3)(A)(iv). With respect to Document categories No. 5 and No. 11, staff at HFS advised the undersigned that there are no documents responsive to these requests. The grounds for this Motion are set forth in Paragraphs 7, 8 and 10.

6. In the alternative, HFS seeks a Protective Order pursuant to Rule 26(c) that no discovery be had on HFS, its officers or employees, except for discovery of documents from HFS concerning

3

the parties' theories of how damages should be calculated after the parties propound verified answers to the interrogatories concerning damages. *See* Relator's Motion to Compel Answer to Interrogatory on Damages, Civil Docket for 02 C 6074 at Document No. 257. The grounds for this Motion are set forth in Paragraphs 8 through 10.

7. The Subpoena should be quashed because it was not served in accordance with Rule 45(b)(1). Fed. R. Civ. P. 45(b)(1) provides that "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person..." The Subpoena was not served on HFS according to Rule 45 but was served, rather, on Assistant Attorney General John E. Huston. The fact of this service is apparent from the face of the Subpoena. *See* Exhibit A. Despite the fact that an Appearance for the non-party IDPA has been on file since on or about March 18, 2005, counsel for AMG did not inquire of Mr. Huston or Ms. Konieczny whether they would accept service of a subpoena for HFS. Mr. Huston promptly objected to this mode of service. Correspondence from John E. Huston to Daniel Curth and Mr. Curth's response are attached as Exhibit F. Despite Mr. Huston's objections, AMG intends to enforce this Subpoena. *See* Exhibit F. Under *Firefighters' Institute v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000) and the plain language of Rule 45(b)(1), AMG's mode of service did not comport with Rule 45(b)(1) and the Subpoena must be quashed.

8. The following portions of the Subpoena should be quashed because the documents sought exhibit no particular nexus to the issues involved in this lawsuit. *F.D.I.C. v. Mercantile Bank of Chicago*, 84 F.R.D. 345, 349-50 (N.D. Ill. 1979). Accordingly, the documents requested are not relevant:

A. Without waiving any objection to the request on any other basis, Document categories No. 1 through No. 9 in the Rider attached to the Subpoena should be quashed in their entirety to the

4

extent AMG wants information from any Medicaid managed care organization other than its own. At Definition M of the Rider to the Subpoena, AMG defined the term "Medicaid MCO" to mean and include "Amerigroup Illinois, Family Health Network, Harmony Health Plan of Illinois, Humana Health Plan, United Health Care of Illinois and any predecessor entities under which these entities have done business since January 1, 1998." *See* Exhibit A at Rider, p. 5. As the non-party HFS understands the issues in this lawsuit, the Plaintiffs are seeking recovery against Amerigroup of Illinois (AMG) and its parent organization under the federal False Claims Act, 31 U.S.C. § 3729 *et seq.* and the Illinois counterpart, the Whistleblower Reward and Protection Act, 740 ILCS 175/1 *et seq.* From the materials in this case that are readily available to HFS' counsel, HFS is unaware of any issues in this lawsuit that raise allegations that Medicaid managed care organizations other than AMG were involved in the fraudulent schemes alleged in reference to AMG. HFS, moreover, is unaware of any authority that permits an alleged wrongdoer to escape liability under the federal and state statutes cited above by a defense that "everybody else was doing it, too." The plain language of 31 U.S.C. § 3729 seems to negate such a defense. If AMG can persuade the court that information from the other Medicaid managed care organizations has a nexus to the issues in the Third Amended Complaint or the AMG defense, then the court should require AMG to pursue the information from the other four Medicaid managed care organizations directly. HFS believes that AMG has already subpoenaed the information sought in document categories No. 2, No. 3, No. 6 and No. 9 from each of the four Medicaid managed care organizations. (As will be demonstrated below at Paragraph 10, it would be far less burdensome to HFS if AMG were to seek the information it believes it is entitled to from the other four Medicaid managed care organizations from them directly. Additionally, if any information that is proprietary to the Medicaid managed care organizations or that constitutes trade secrets is contained within the documents AMG wants, the businesses themselves are the only ones to

5

know how such disclosures would affect them. The search and retrieval costs would not be borne by HFS and the costs occasioned by the need to redact privileged information and safeguard possible proprietary information would be avoided.)

B. Document categories No. 2 through No. 4 and No. 7 through No. 9 should be quashed in their entirety regardless of the disposition of the relief sought in Paragraph 8(A). In these requests, AMG seeks information from HFS' files about, broadly, HFS' knowledge of AMG's alleged misconduct and whether the other Medicaid managed care organizations engaged in the same types of alleged misconduct. At the July 25th meeting described in Paragraph 3, AMG's counsel, Mr. Dorman, defended these requests on the ground that AMG needs this information to establish that HFS had knowledge of the alleged fraudulent activities of AMG. The non-party, HFS, understands that one of AMG's defenses to this action is that HFS' prior knowledge of the allegedly false claims vitiates this action. *U.S. ex rel. Durcholz v. FKW, Inc.*, 189 F.3d 542, 544-45 (7th Cir. 1999). *See* AMG's Motion for Summary Judgment, Civil Docket 02 C 6074 at Document No. 52, Memorandum of Law at pp. 8-10. Almost three years into this litigation, AMG advised HFS, for the first time, that it needs these documents to establish its defense that HFS had "knowledge" of AMG's alleged fraudulent activities that are the subject of this lawsuit. First, even if AMG can legitimately establish this defense for itself, the relations between HFS and other Medicaid managed care organizations are not relevant to the defense and HFS adopts all the arguments set forth in Paragraph 8(A) as its arguments here. Second, if AMG believes that the conduct that is involved in this case was within the knowledge and approval of HFS as required by *Durcholz*, AMG knows who in HFS approved of those activities. In other words, under *Durcholz*, the knowledge defense requires evidence that shows that the alleged fraud was accomplished under the express directions of the government. It is not sufficient, under *Durcholz*, for the alleged fraudfeasor to attempt to open up the files of HFS to see if

6

government contract monitors had suspicions about AMG's activities. Finally, AMG must already possess the documents it claims would show HFS' knowledge and approval of AMG's alleged fraud. *See* Paragraph 10 of this Motion.

C. Document category No. 8 should be quashed in its entirety. This category seeks HFS documents that set forth opinions on whether AMG is a "provider" as that technical term is used by HFS. First, the federal False Claims Act is not an appropriate vehicle for the courts to police a party's compliance with contracts or administrative regulations. *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1020 (7th Cir. 1999). Second, if the language and meaning of the contract between HFS and AMG is independently relevant to the issues in this case, the meaning of the document is an issue of law for the court to resolve. The legal opinions of HFS staff on the point, whether they are lawyers or not, are not relevant.

D. Document categories No. 1, No. 6, No. 10 and No. 12 should be quashed in their entirety because there is currently no particular nexus between these requests and any issues in the lawsuit. *F.D.I.C. v. Mercantile National Bank of Chicago*, 84 F.R.D. at 349-50. AMG's counsel, Mr. Dorman, stated during the July 25, 2005 meeting with HFS' counsel described in Paragraph 3 above, that these requests go to issues involving how AMG will calculate potential damages. However, the propriety of these requests is impossible to evaluate because the non-party HFS understands that AMG is unwilling to commit to how it will argue that damages will be calculated. *See* Paragraph 9 of this Motion. AMG made no commitments to HFS' counsel at the July 25th meeting how it will argue what the proper measure of damages should be. Given its unwillingness to commit to its theory, AMG cannot be permitted to secure information from the non-party that goes to how it will argue that damages should be measured.

7

9. HFS understands that the Relator in this case is seeking to compel AMG to respond to an interrogatory concerning damages. *See* Relator's Motion to Compel Answer To Interrogatory On Damages, Civil Docket 02 C 6074 at Document No. 257. HFS proposes that if the court declines to quash document categories No. 1, No. 5, No. 6 and No. 10 through No. 12, then, in the alternative, the court should enter a Protective Order pursuant to Fed. R. Civ. P. 26 that would bar all parties from taking any discovery on HFS, its officers, and employees, except for discovery on the non-party HFS concerning damages and only after such time as all parties have committed to their theories concerning the appropriate measure of damages in this case. A copy of the Draft Protective Order is attached as Exhibit G. This Protective Order should further provide that any requests for information from HFS that go to the issue of the parties' theories of damages must be narrowly drawn to those theories, articulated in writing and properly verified by the parties, and that those verified writings be contemporaneously served on HFS with the request for information. This would enable HFS to evaluate all requests for information as to their scope, relevance and burdensomeness to produce (presumed to be primarily electronic claims data), against how the parties actually intend to proceed on the issue of damages. The Protective Order would shield HFS from unreasonable expenses incident to the production and would give HFS the time that is reasonably necessary to make a production. Finally, HFS would retain the right to make any objections or challenges to a discovery request provided for in the federal rules, including a further application to the Court. Given the history of AMG's attempts to secure information from HFS as set forth in Paragraph 4 of this Motion and in light of all the arguments set forth in this Motion, HFS is entitled to protection from further expense, annoyance and undue burdens already caused it by this litigation. As stated in Paragraph 4, AMG has customarily served its subpoenas on HFS when fact discovery cut-off dates are nearing. Each one of AMG's subpoenas has required HFS' staff and its counsel to engage in analyses of what

8

documents are potentially responsive and where those documents are located. HFS' staff and its

counsel must then estimate the time and staff needed to locate, read, redact, copy and prepare for

shipment to Chicago, in the case of paper documents, and must estimate the time and staff needed to

pull electronic data and put it into a form that can be used by the party requesting it. The time HFS'

staff devotes to these subpoenas is time away from managing the healthcare programs that are the

statutory obligations of HFS to oversee. At the same time, the Protective Order would enable HFS to

cooperate with all reasonable, *i.e.*, non-burdensome, requests the parties have to attempt to prove the

amounts of money the governments are entitled to recover, if any, as part of the statutory remedies.

10. This Subpoena causes undue burden to HFS within the meaning of Rule 45(c)(3)(A)(iv)

and should also be quashed for these reasons:

A. On its face, the Rider to the Subpoena demonstrates that AMG is seeking documents

responsive to twelve categories of documents seeking very broad and far-ranging information

concerning AMG, as well as four other Medicaid managed care organizations operating in Illinois

from HFS. The Subpoena for Documents seeks production of these documents dating back from

January 1, 1998 to the present. As detailed below, the search for and production of these documents

subjects HFS to undue burden within the meaning of Rule 45(c)(3)(A)(iv).

B. There are potentially hundreds, if not thousands, of boxes that contain documents

responsive to this Subpoena. All documents responsive to this Subpoena are kept in HFS' main

office in Springfield, Illinois, or in storage facilities in Springfield, Illinois. HFS staff must search

the boxes for documents that are responsive to the requests. To the extent AMG is seeking

communications between HFS and itself, AMG must already possess the documents it now wants

HFS to search for.

C. The boxes of information referenced in Paragraph B are known to contain some confidential Medicaid recipient information that would have to be first located and then redacted prior to any tender of the documents to an outside individual or entity. The existence of such privileges, without waiver or exception, requires that this Subpoena be quashed pursuant to Rule 45(c)(3)(A)(iii). Among the privileges applicable to certain information in this production is the client confidentiality requirement of the Medicaid law. 42 U.S.C. §1396a(a)(7), 45 C.F.R. § 164.512. In addition, the Health Insurance Portability and Accounting Act ("HIPAA") at P.L 104-191, 45 C.F.R. Part 160, and 45 C.F.R. Part 164, Subparts A and E, protects the Medicaid recipient's private health information. Finally, state law protects the client's confidentiality of identity and receipt of Medicaid services. 305 ILCS 5/11-12.

D. The boxes of information referenced in Paragraph B are believed to contain information that is proprietary to the other Medicaid managed care organizations, and/or confidential under state and federal law for matters such as recipient's identity, recipient's personal health information, and the managed care organization's internal quality control and peer review, 735 ILCS 5/8-2101. The IDPA adopts by reference prior Motions to Quash filed by the four Medicaid managed care organizations on this point. *See* Motions to Quash, Civil Docket 02 C 6074 at Document Nos. 134, 136, 138, and 140.

E. Document category No. 7 should be quashed in its entirety because it places undue burden on the non-party HFS to produce the e-mails of the fifteen individuals named in the Subpoena. *See* Exhibit H, Affidavit of Donald Perry. Even apart from the burden and expense to HFS involved, a search of the available e-mail files will not provide the complete production AMG wants given the time limits on the storage of the back-up tapes. Moreover, apart from the burden and expense to the non-party HFS involved, HFS separately objects to disclosing e-mail of the agency Director.

10

F. There is no protective order in place to protect this privileged and proprietary information. HFS has never participated in any prior negotiation for any other protective order entered by the Court. HFS cannot be bound by any protective order negotiated by the parties to this action.

11. For all the reasons set forth in Paragraph 10(A) through (F), the Subpoena subjects the non-party HFS to undue burden and expense, in both man-hours and money, in searching and redacting and copying documents.

12. The action of AMG in issuing the Subpoena for Documents, after subpoenas seeking the same information from HFS had been quashed, violates AMG's duty to the non-party HFS, under Fed. R. Civ. P. 45(c)(1), to avoid imposing undue burden or expense on the HFS in responding to the Subpoena. *See* Paragraphs 4, 9 and 10 of this Motion. Also, a two-week return date for a search of hundreds of boxes of documents to locate documents similar to those requested by subpoenas already quashed on two separate occasions by the Court is unduly burdensome and expensive, and should be sanctioned with an award of attorneys' fees to HFS pursuant to Fed. R. Civ. P. 45(c)(1).

WHEREFORE, for the reasons stated above, the non-party Illinois Department of Healthcare and Family Services respectfully requests that this Court grant its Motion to Quash the Subpoena attached as Exhibit A pursuant to Fed. R. Civ. P. 26 and 45, and enter an award in favor of HFS and against AMG for attorneys' fees pursuant to Fed. R. Civ. P. 45(c)(1). In the alternative, the non-party Illinois Department of Healthcare and Family Services respectfully requests that this Court enter the Protective Order submitted as Exhibit G.

11

Respectfully submitted,

LISA MADIGAN
Attorney General
State of Illinois

By: KAREN KONIECZNY #1806277
JOHN E. HUSTON #3128039
  Assistant Attorneys General
160 N. LaSalle Street, Suite N-1000
Chicago, IL 60601
(312) 793-2380

DATED: August 11, 2005

12

# EXHIBIT A

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

United States of America,
State of Illinois, ex rel.,
Cleveland A. Tyson
　　　　　v.

Amerigroup Illinois, Inc.

### SUBPOENA IN A CIVIL CASE

CASE NUMBER:　　　02 C 6074

RECEIVED
By JMC - 4:19

WELFARE LITIGATION
ATTORNEY GENERAL

To:　Illinois Department of Public Aid
c/o John E. Huston
Assistant Attorney General
160 North LaSalle Street, Suite N-1000
Chicago, IL  60601

☐　　YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☐　　YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| | |

☒　　YOU ARE COMMANDED to produce and permit inspection and copying of the documents or objects specified in the attached Rider.

| PLACE<br>Freeborn & Peters LLP, 311 S. Wacker Dr., Suite 3000, Chicago, IL 60606 | DATE AND TIME<br>August 12, 2005, 10:00 a.m. |
| --- | --- |

☐　　YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PLACE | DATE AND TIME |
| --- | --- |
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>Attorney for Defendant Amerigroup Illinois, Inc. | DATE<br>7/29/05 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Daniel C. Curth, 311 S. Wacker Drive, Suite 3000, Chicago, IL  60606 (312) 360-6000

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

[1] This subpoena is served on behalf of all defendants in the above-captioned case.

# PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| | |

SERVED

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

# DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D

(c) **PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no except or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, of commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may to protect a person subject to or affected by the subpoena, quash, or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assure that the person to whom the subpoena is addressed will reasonable compensated, the court may order appearance or production only upon specified conditions.

(d) **DUTIES IN RESPONDING TO SUBPOENA.**

1. A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

2. When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## DEFINITIONS, INSTRUCTIONS, AND DOCUMENTS REQUESTED

In accordance with the Definitions and Instructions set forth below, please produce the following Documents Requested:

### DOCUMENTS REQUESTED

1.    All monthly/quarterly/annual reports and certifications submitted to the IDPA from each of the five Medicaid MCOs.

2.    All communications between the IDPA and any of the Medicaid MCOs regarding any complaint, accusation, concern, issue, or allegation of adverse selection, cherry-picking, discrimination or improper conduct in connection with marketing to or enrolling potential enrollees or members based on their health status, including without limitation such communications regarding marketing to or enrolling pregnant women or persons with special medical needs.

3.    All documents discussing potential or actual corrective action plans or measures for Amerigroup Illinois, Amerigroup Corporation, or any of the Medicaid MCOs in connection with any complaint, accusation, concern, issue, or allegation of adverse selection, cherry-picking, discrimination or improper conduct in connection with marketing to or enrolling potential enrollees or members based on their health status.

4.    All other documents discussing adverse selection, cherry-picking, discrimination or improper conduct in connection with marketing to or enrolling potential enrollees or members based on their health status by Amerigroup Illinois, Amerigroup Corporation, or any of the Medicaid MCOs, including without limitation such documents regarding marketing to or enrolling pregnant women or persons with special medical needs..

5.     All documents concerning the calculation of capitation rates for any of the Medicaid MCOs, including documents that relate to or discuss any reason for changes, modifications or adjustments to the calculation methodology in 2000 and 2003.

6.     All documents that list or discuss the annual medical loss ratios for any of the Medicaid MCOs or that discuss the calculation or computation of those annual medical loss ratios.

7.     All documents from the active or stored e-mail accounts of the following current and former IDPA employees when those accounts are searched with any and all of these search terms: adverse select*, cherry, pregnan*, specialist*, trimester, discriminat*, and continuity of care (with the asterisks indicating the use of connectors that would find each term with any characters where the asterisks are located): Anne Marie Murphy, Nelly Ryan, Mickey Rendok, Kelly Carter, Barry Maram, George Hovanec, Debbie Saunders, Jim Parker, Andy Kane, Jackie Garner, Matt Powers, Renee Perry, Michelle Maher, Kathy Hofferkamp, and Laura Ray.

8.     All documents that address or discuss whether Amerigroup Illinois, Amerigroup Corporation or any of the Medicaid MCOs are or are not to be considered as Providers, including any documents addressing or discussing whether Amerigroup Illinois, Amerigroup Corporation, or any of the Medicaid MCOs are to be considered as "Providers" under any contract with the IDPA.

9.     All documents discussing continuity of care issues as they relate to enrollment of, or marketing to, potential or actual enrollees or members in any plan of the Medicaid MCOs.

10.     An electronic set of all fee-for-service claims from fiscal years 1998 and 2001 for Illinois Region 4 (Cook County). These claims records need not include any information that would allow for the identification of the claimant by name, address or other identification

2

number (*e.g.* social security number), but should include a unique identifier assigned to each claimant that, although not allowing for identification of the claimant, will permit the grouping of claims during the various months in each of the fiscal years for purposes of determining the type and provider of treatment during the fiscal year for each claimant.

11. Any calculations relating to the MCO capitation rates for Illinois Region 4 that were implemented in July 2001, in January 2002 and in July 2002.

12. All documents that indicate the number of delivery case events in Illinois Region 4 during fiscal year 1998 in the following four age/gender cells: (a) 14-20 female MAG; (b) 14-20 female MANG; (c) 21-44 female MAG; and (d) 21-44 female MANG.

## DEFINITIONS AND INSTRUCTIONS

In responding to and providing the above Documents Requested, the following Definitions and Instructions apply as if incorporated in each individual request:

### Definitions

A. The definitions set forth in Rule 45 of the Federal Rules of Civil Procedure are hereby incorporated by reference.

B. "Amerigroup Illinois" means Amerigroup, Illinois, Inc., f/k/a Americaid Illinois, Inc., d/b/a Americaid Community Care.

C. "Amerigroup Corp." means Amerigroup Corporation.

D. "Communications" or "communicated" includes statements, discussions or correspondence regardless of the form of transfer or transmission and any utterance heard by another Person, whether in person, by telephone or otherwise, as well as all mechanical or electronic information, sound recordings or transcripts thereof.

3

E.     "Concerning" means directly or indirectly mentioning or describing, consisting of, pertaining to, being connected with, regarding, relating to, or reflecting upon a stated subject matter.

F.     "Document" means the original or any draft of any kind of any written, recorded or graphic information or matter, however produced, reproduced, stored or preserved, whether in tangible form or electronically (including, but not limited to, storage in a computer system, computer hard drive, computer disk, software program, or computer database), of any kind or description, whether sent or received or possessed, and all copies thereof which are different in any way from the original, regardless of whether designated "draft," "confidential," "internal" or otherwise, and includes, but is not limited to, correspondence, e-mails, information saved in any computer to which you (as defined herein) has access (including in any file, hard drive, or software disk), notes, memoranda, reports, photographs, recordings, diaries, minutes, telephone call logs, reports or summaries of negotiations or discussions, financial statements or information, calendars, appointment books, proposals, offers, working papers, timesheets, logs or materials similar to any of the foregoing, data in existence and stored in memory components, data compilations from which information can be derived or obtained and translated into reasonably usable form, drawings, blueprints, specifications, designs, or any other written, recorded or graphic material whatsoever.

G.     "IDPA" means the entity formerly called the Illinois Department of Public Aid, now called the Illinois Department of Healthcare and Family Services, including without limitation any of its employees, agents, representatives and attorneys.

4

H.     "Delivery Case Event" shall mean any claim which involves the following DRG or CPT codes: DRG 370, DRG 371, DRG 372, DRG 373, DRG 374, DRG 375, CPT59409, CPT59410, CPT59514, CPT59515, CPT59612, CPT59614, CPT59620 and CPT59622.

I.     "Person" or "Persons" includes any individual, firm, partnership, corporation, group, association, organization or other entity of any kind.

J.     "Regarding," "related to," "relate to" or "relating to" means directly or indirectly mentioning or describing, consisting of, pertaining to, being connected with, regarding or reflecting upon a stated subject matter.

K.     "You" and "your" means the IDPA, as herein defined, and anyone acting on its behalf, including, but not limited to agents, employees, attorneys, and representatives.

L.     The term "MCO" means Managed Care Organization.

M.     The term "Medicaid MCO" means and includes Amerigroup Illinois, Family Health Network, Harmony Health Plan of Illinois, Humana Health Plan, United Health Care of Illinois and any predecessor entities under which these entities have done business in Illinois since January 1, 1998.

## Instructions

1.     The instructions set forth in Rule 45 of the Federal Rules of Civil Procedure are hereby incorporated by reference.

2.     Unless specifically directed otherwise, produce all responsive documents from January 1, 1998 through the present.

3.     Each request is addressed to any documents within the possession, custody or control of the IDPA (as defined herein), including but not limited to documents within the possession, custody or control of the IDPA, whether or not secured from any other person, unless

otherwise specifically stated, including but not limited to any officials, partners, shareholders, officers, directors, employees, attorneys, accountants, consultants, financial advisors, governmental advisors, regulatory advisors, investigators, or brokers to whom you have provided documents. You shall furnish all documents requested above that have been provided to you by any persons (as defined herein) who are obligated to give you access to, who have given you access to, or who have agreed to give you access to, documents or information, upon your request, whether or not such access to documents has, as yet, been given.

4.      You must secure, preserve, and produce all responsive electronic documents, including but not limited to information stored on servers, computer hard drives, software applications, personal data assistants, e-mail, networks, and Web sites, in electronic form, including any and all meta-data and other data that is otherwise available from the documents and information in their electronic format.

5.      Whenever necessary to bring within the scope of any request anything that might otherwise be construed to be outside to be outside the scope of such request, the singular form shall be interpreted as including the plural; likewise, the plural form shall be interpreted as including the singular. Any reference to the masculine, feminine, or neuter gender shall be interpreted as including each gender not specifically included in the reference.

6.      If you cannot produce documents in response to a request or any part thereof, produce documents to the best extent possible and state the reason for your inability to provide a complete production. These requests are continuing in character so as to require you to produce responsive documentation as soon as they are created or possessed.

7.      If you object to any request or any part thereof, state your objection with specificity, including the particular part of the request to which you object, and respond to any

6

remaining part of the request to the full extent that such production would not be subject to your objection. If you object to any of the Definitions and Instructions herein, you must do so by written response hereto. If any written response to a Definition or Instruction is not made prior to your response to these requests for production, it will be presumed that you do not object to any Definition or Instruction.

8.  The word "and" and the word "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of any request anything that might otherwise be construed to be outside its scope. The terms "each" shall be construed to include the word "every" and "every" shall be construed to include the word "each." The term "any" shall be construed to include the word "all" and "all" shall be construed to include the word "any." The term "including" shall be construed to include the phrase "without limitation."

9.  In the event that a document is not produced because it is not presently in your possession or control (including but not limited to any document that has been lost or destroyed) or because of a claim or privilege, identify the document by providing the following information:

  a. the date or, if unknown, the approximate date;

  b. the type of document (e.g., letter, memorandum, e-mail)

  c. the author(s) and any recipient(s) or addressee(s);

  d. a general description of the subject matter;

  e. present location and custodian;

  f. any other description that may enable any person to locate the particular document;

  g. if the document is withheld on grounds of an assertion of privilege or work product protection, in addition to the above information, identify with particularity

7

all of the reasons and bases for asserting the privilege or work product protection, including (i) the name of every person to whom such information or document has been delivered, (ii) the name of every person from whom such information or document originated, (iii) the subject matter and substance of such information and document, and (iv) the particular privilege claimed; and

h. if the document has been lost or destroyed, identify and describe with particularity the date and circumstances surrounding the reasons for its loss or destruction, and identify the last known custodian of the document and each person who has knowledge of the loss or destruction of the document.

10. If only a portion of any document is subject to an assertion of privilege, produce each and every portion of such document not containing the allegedly privileged matter, with the privileged portion masked or redacted if necessary, and provide the information set forth above with regard to any information withheld on grounds of privilege or work product protection.

11. The above definitions govern the use of any and all of the terms in this Rider, including the definitions and instructions as well as the individual requests, whether or not those terms are capitalized.

12. Respond to each request separately and independently, and organize and label the requested documents to correspond with the category of each request.

13. Respond to each request with full and complete documents, including those portions that may contain information not specifically requested.

14. If there are no documents responsive to any request, please state so in your response to that request.

#907377

8

# EXHIBIT B

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

### SUBPOENA IN A CIVIL CASE

United States of America,
State of Illinois, ex rel.,
Cleveland A. Tyson

    v.

Amerigroup Illinois, Inc.

CASE NUMBER: 02 C 6074

To:   Nancy Shalowitz
General Counsel
Illinois Department of Public Aid
James R. Thompson Center - Floor 10
100 W. Randolph
Chicago, IL 60601

| ☐ | YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case. |
|---|---|

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

| ☐ | YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. |
|---|---|

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

| ☒ | YOU ARE COMMANDED to produce and permit inspection and copying of the documents or objects specified in the attached Rider. |
|---|---|

| PLACE | DATE AND TIME |
|---|---|
| Freeborn & Peters LLP, 311 S. Wacker Dr., Suite 3000, Chicago, IL 60606 | March 21, 2005, 10:00 a.m. |

| ☐ | YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below. |
|---|---|

| PLACE | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* Attorney for Defendant Amerigroup Illinois, Inc | 3/7/5 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Daniel C. Curth, 311 S. Wacker Drive, Suite 3000, Chicago, IL 60606 (312) 360-6000

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

[1] This subpoena is served on behalf of all defendants in the above-captioned case.

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
            DATE                    SIGNATURE OF SERVER

                                    ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B)Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    Fails to allow reasonable time for compliance;

(ii)   requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may be ordered to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)   subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development of commercial information, or

(ii)   requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may to protect a person subject to or affected by the subpoena, quash, or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

1. A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

2. When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# RIDER TO SUBPOENA

## DEFINITIONS, INSTRUCTIONS, AND DOCUMENTS REQUESTED

### DEFINITIONS AND INSTRUCTIONS

In responding to and providing the following Documents Requested, the following Definitions and Instructions apply as if incorporated in each individual request:

#### Definitions

A.    The definitions set forth in Rule 45 of the Federal Rules of Civil Procedure are hereby incorporated by reference.

B.    "Amerigroup Illinois" means Amerigroup, Illinois, Inc., f/k/a Americaid Illinois, Inc., b/b/a Americaid Community Care.

C.    "Amerigroup Corp." means Amerigroup Corporation.

D.    "Communications" or "communicated" includes statements, discussions or correspondence regardless of the form of transfer or transmission and any utterance heard by another Person, whether in person, by telephone or otherwise, as well as all mechanical or electronic information, sound recordings or transcripts thereof.

E.    "Complaint" means the "Second Amended Complaint" filed by the United States of America ex rel. Cleveland A. Tyson, and the State of Illinois ex rel. Cleveland A. Tyson v Amerigroup Illinois, Inc., Case No. 02C-6074, filed on or around October 14, 2003, or any other amended complaint that Plaintiff secures leave to file in this civil action.

F.    "Concerning" means directly or indirectly mentioning or describing, consisting of, pertaining to, being connected with, regarding, relating to, or reflecting upon a stated subject matter.

G.  "Document" means the original or any draft of any kind of any written, recorded or graphic information or matter, however produced, reproduced, stored or preserved, whether in tangible form or electronically (including, but not limited to, storage in a computer system, computer hard drive, computer disk, software program, or computer database), of any kind or description, whether sent or received or possessed, and all copies thereof which are different in any way from the original, regardless of whether designated "draft," "confidential," "internal" or otherwise, and includes, but is not limited to, correspondence, e-mails, information saved in any computer to which you (as defined herein) has access (including in any file, hard drive, or software disk), notes, memoranda, reports, photographs, recordings, diaries, minutes, telephone call logs, reports or summaries of negotiations or discussions, financial statements or information, calendars, appointment books, proposals, offers, working papers, timesheets, logs or materials similar to any of the foregoing, data in existence and stored in memory components, data compilations from which information can be derived or obtained and translated into reasonably usable form, drawings, blueprints, specifications, designs, or any other written, recorded or graphic material whatsoever.

H.  "IDPA" means the Illinois Department of Public Aid, including without limitation any of its employees, agents, representatives and attorneys.

I.  "IDPA Contract" means the Contract for Furnishing Health Services By A Health Maintenance Organization, dated April 1, 2000, attached as Exhibit A to the Complaint.

J.  "Person" or "Persons" includes any individual, firm, partnership, corporation, group, association, organization or other entity of any kind.

K.  "Plaintiff" means the United States of America ex rel. Cleveland A. Tyson, and the State of Illinois ex rel. Cleveland A. Tyson, and all of its Affiliates (as defined herein),

2

together with their respective predecessors, successors and assigns, and their respective directors, officers, employees, attorneys and agents, including any and all other persons who move for and secure leave to intervene in this case, together with their respective predecessors, successors and assigns, and their respective directors, officers, employees and agents.

L.     The term "present case" means case *United States of America ex. rel Cleveland A. Tyson, et al. v. Amerigroup Illinois, Inc.*, Case No. 02 C 6074.

M.     "Preparation," when used in the context of the preparation of any document, means the process of creation, including without limitation the drafting, editing, or revising of any such document.

N.     "Regarding," "related to" or "relating to" means directly or indirectly mentioning or describing, consisting of, pertaining to, being connected with, regarding or reflecting upon a stated subject matter.

O.     The term "Tyson" means "Cleveland A. Tyson," Plaintiff-Relator in case *United States of America ex rel Cleveland A. Tyson, et al. v. Amerigroup Illinois, Inc*, Case No. 02 C 6074, and anyone acting on Tyson's behalf, including, but not limited his agents, employees, attorneys, and representatives.

P.     "You" and "your" means the IDPA, as herein defined, and anyone acting on its behalf, including, but not limited to agents, employees, attorneys, and representatives.

Q.     The term "MCO" means Managed Care Organization as that term is defined in the IDPA Contract.

R.     The term Medicaid MCO means and includes:

Amerigroup Illinois

Family Health Network

3

Harmony Health Plan

Humana Health Plan

United Healthcare of Illinois

### Instructions

1.     The instructions set forth in Rule 45 of the Federal Rules of Civil Procedure are hereby incorporated by reference.

2.     Each request is addressed to any documents within the possession, custody or control of the IDPA (as defined herein), including but not limited to documents within the possession, custody or control of the IDPA, whether or not secured from any other person, unless otherwise specifically stated, including but not limited to any officials, partners, shareholders, officers, directors, employees, attorneys, accountants, consultants, financial advisors, governmental advisors, regulatory advisors, investigators, or brokers to whom you have provided documents. You shall furnish all documents requested above that have been provided to you by any persons (as defined herein) who are obligated to give you access to, who have given you access to, or who have agreed to give you access to, documents or information, upon your request, whether or not such access to documents has, as yet, been given.

3.     You must secure, preserve, and produce all responsive electronic documents, including but not limited to information stored on servers, computer hard drives, software applications, personal data assistants, e-mail, networks, and Web sites, in electronic form, including any and all meta-data and other data that is otherwise available from the documents and information in their electronic format.

4.     Whenever necessary to bring within the scope of any request anything that might otherwise be construed to be outside to be outside the scope of such request, the singular form

4

shall be interpreted as including the plural; likewise, the plural form shall be interpreted as including the singular. Any reference to the masculine, feminine, or neuter gender shall be interpreted as including each gender not specifically included in the reference.

5.      If you cannot produce documents in response to a request or any part thereof, produce documents to the best extent possible and state the reason for your inability to provide a complete production. These requests are continuing in character so as to require you to produce responsive documentation as soon as they are created or possessed.

6.      If you object to any request or any part thereof, state your objection with specificity, including the particular part of the request to which you object, and respond to any remaining part of the request to the full extent that such production would not be subject to your objection. If you object to any of the Definitions and Instructions herein, you must do so by written response hereto. If any written response to a Definition or Instruction is not made prior to your response to these requests for production, it will be presumed that you do not object to any Definition or Instruction.

7.      The word "and" and the word "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of any request anything that might otherwise be construed to be outside its scope. The terms "each" shall be construed to include the word "every" and "every" shall be construed to include the word "each." The term "any" shall be construed to include the word "all" and "all" shall be construed to include the word "any." The term "including" shall be construed to include the phrase "without limitation."

8.      In the event that a document is not produced because it is not presently in your possession or control (including but not limited to any document that has been lost or destroyed) or because of a claim or privilege, identify the document by providing the following information:

5

a.    the date or, if unknown, the approximate date;

b.    the type of document (e.g., letter, memorandum, e-mail)

c.    the author(s) and any recipient(s) or addressee(s);

d.    a general description of the subject matter;

e.    present location and custodian;

f.    any other description that may enable any person to locate the particular document;

g.    if the document is withheld on grounds of an assertion of privilege or work product protection, in addition to the above information, identify with particularity all of the reasons and bases for asserting the privilege or work product protection, including (i) the name of every person to whom such information or document has been delivered, (ii) the name of every person from whom such information or document originated, (iii) the subject matter and substance of such information and document, and (iv) the particular privilege claimed; and

h.    if the document has been lost or destroyed, identify and describe with particularity the date and circumstances surrounding the reasons for its loss or destruction, and identify the last known custodian of the document and each person who has knowledge of the loss or destruction of the document.

9.    If only a portion of any document is subject to an assertion of privilege, produce each and every portion of such document not containing the allegedly privileged matter, with the privileged portion masked or redacted if necessary, and provide the information set forth above with regard to any information withheld on grounds of privilege or work product protection.

6

10. The above definitions govern the use of any and all of the terms in these requests, including the definitions and instructions as well as the specific interrogatories below, whether or not those terms are capitalized.

11. Respond to each request separately and independently, and organize and label the requested documents to correspond with the category of each request.

12. Respond to each request with full and complete documents, including those portions that may contain information not specifically requested.

13. Any term cited from the Complaint is to be given the same use and meaning that is defined and intended for that term in the Complaint.

14. If there are no documents responsive to any request, please state so in your response to that request.

15. Unless specifically directed otherwise, produce all responsive documents from January 1, 1996 through the present.

16. All documents and data that are maintained in an electronic format shall be produced in that same format.

## DOCUMENTS REQUESTED

1. All monthly/quarterly/annual reports submitted to the IDPA from each of the five Medicaid MCOs.

2. All communications between the IDPA and any of the Medicaid MCOs regarding any complaint or allegation of discriminatory enrollment.

3. Any documents describing the manner in which any of the Medicaid MCOs enroll their members (e.g., direct contact by an agent on the street, mailing solicitation, etc.)

7

4. All documents concerning the fee-for-service medicaid population (the "population") for Cook County that contain or identify, on a monthly, quarterly or annual basis, the following information:

a) The gender distribution of the population;

b) The portion of population completing: grade school, high school and college;

c) The portion of population on disability;

d) Of women in the population, the portion that is of child-bearing age (approximately 14 to 44);

e) The number of households with: two parents and children, one parent and children, and no children;

f) The portion of the population employed full time, employed part time, unemployed or retired;

h) The marital status of the population;

i) The portion of the population receiving services from a specialist other than an obstetrician;

j) The portion of the population receiving the services of an obstetrician;

k) The portion of all medical payments for the population that are for obstetric services;

l) The portion of all medical payments for the population that are for specialist services other than obstetricians; and

m) The percentage of pregnancies that result in live births.

5. On a monthly, quarterly or annual basis, documents containing the same data as in request 4, but for each of the Medicaid MCOs.

8

6.     On a monthly, quarterly or annual basis, documents containing the same data as in request 5, but limited to the new enrollees in the Medicaid MCOs within the reporting period (month, quarter, or year).

7.     All documents concerning the population for Illinois as a whole that contain or identify, on a monthly, quarterly or annual basis, the following information:

a)     The gender distribution of the population;

b)     The portion of population completing: grade school, high school and college;

c)     The portion of population on disability,

d)     Of women in the population, the portion that is of child-bearing age (approximately 14 to 44);

e)     The number of households with: two parents and children, one parent and children, and no children;

f)     The portion of the population employed full time, employed part time, unemployed or retired;

h)     The marital status of the population;

i)     The portion of the population receiving services from a specialist other than an obstetrician,

j)     The portion of the population receiving the services of an obstetrician;

k)     The portion of all medical payments for the population that are for obstetric services;

l)     The portion of all medical payments for the population that are for specialist services other than obstetricians; and

m)     The percentage of pregnancies that result in live births.

9

8. On a monthly, quarterly or annual basis, documents containing the same data as in request 7, but for each of the Medicaid MCOs.

9. On a monthly, quarterly or annual basis, documents containing the same data as in request 8, but limited to the new enrollees in the Medicaid MCOs within the reporting period (month, quarter, or year).

10. On an annual basis, for each of the Medicaid MCOs, all documents which indicate the number of participants in that MCO who reside in Chicago, who reside in Cook County but outside of Chicago and who reside outside of Cook County.

11. On an annual basis, the ratio of the number of obstetricians ("OBs") to the total number of doctors for each of the Medicaid MCOs in Cook County.

12. On an annual basis, the ratio of the number of pregnant women to the number of OBs for each of the Medicaid MCOs in Cook County.

13. For each of the Medicaid MCOs, all documents that identify the average length of time that its participants have been enrolled in that particular MCO.

14. All internal IDPA documents concerning Amerigroup Illinois or Amerigroup Corp.

15. All IDPA communications concerning Amerigroup Illinois or Amerigroup Corp.

16. All documents concerning complaints regarding Amerigroup Illinois or any of the other Medicaid MCOs.

17. All documents concerning adverse selection, cherry picking or profit maximization by Amerigroup Illinois or any of the other Medicaid MCOs.

18. All documents concerning calculation of capitation rates for Medicaid MCOs.

10

19.     All documents concerning or regarding marketing, training or advertising materials submitted or provided to the IDPA by any of the Medicaid MCOs, including any modifications or amendments to those materials.

20.     On an annual basis, all documents concerning the medical loss ratios of the Medicaid MCOs.

21.     All documents concerning corrective action plans for any of the Medicaid MCOs.

22.     All documents concerning the profitability of the Medicaid MCOs on an annual basis.

23.     All documents concerning discrimination by any of the Medicaid MCOs against eligible enrollees on the basis of health status.

24.     All documents related to the present case, to the extent that those documents are not responsive to the above requests.

25.     All documents related to the enrollment or marketing practices of Amerigroup Illinois or Amerigroup Corp., to the extent that those documents are not responsive to the above requests.

26.     All documents related to Amerigroup Illinois or Amerigroup Corp., to the extent that those documents are not responsive to the above requests.

27.     All IDPA email communications concerning Amerigroup Illinois or Amerigroup Corp.

28.     All Medicaid MCO Marketing Representative Training Program plans.

29.     All documents concerning policies or protocols for enrollment of pregnant women into Medicaid MCOs.

11

30.     All documents concerning continuity of care as it relates to participants in Medicaid MCOs.

31.     All documents concerning fraudulent submissions by any of the Medicaid MCOs.

32.     All documents concerning retroactive disenrollment of eligible enrollees by any of the Medicaid MCOs.

33.     All reports submitted by the IDPA to any elected government officials or congressmen concerning any of the Medicaid MCOs.

34.     Transcripts of any testimony by anyone at the IDPA concerning any of the Medicaid MCOs.

35.     All internal IDPA documents regarding whether to join with Tyson in the present case.

36.     All documents regarding communications between the IDPA and Tyson concerning the present case or any of Tyson's allegations.

37.     All documents regarding communications between the IDPA and any person concerning the present case or any of Tyson's allegations.

wa60323

12

# Affidavit of Process Server

Tyson
**PLAINTIFF/PETITIONER**

vs Amerigroup IL Inc.

Deanna Hanson
**DEFENDANT/RESPONDENT**

02c6074
**CASE #**

Being duly sworn, on my oath, I
declare that I am a citizen of the United States, over the age of eighteen and not a party to this action.

**Service:** I served Nancy Shalowitz
**NAME OF PERSON/ENTITY BEING SERVED**

with the (documents) ☒ Subpoena with $ 40 witness fee and mileage
Rider

by serving (NAME) Tomara Hoffman - General Counsel DPA.

at ☐ Home
☒ Business 100 W. Randolph 10th Fl
☐ on (DATE) 3/7/05 at (TIME) 4:03

Thereafter copies of the documents were mailed by prepaid, first class mail on (DATE) ____

from (CITY) _____ (STATE) _____

## Manner of Service:

☐ By Personal Service.
☒ By leaving, during office hours, copies at the office of the person/entity being served, leaving same with the person apparently in charge thereof.

namely____
☐ By leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the general nature of the papers.

namely____
☐ By posting copies in a conspicuous manner to the address of the person/entity being served.

## Non-Service:
After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):
☐ Unknown at Address          ☐ Evading                            ☐ Other:____
☐ Address Does Not Exist      ☐ Service Cancelled by Litigant
☐ Moved, Left no Forwarding   ☐ Unable to Serve in a Timely Fashion

## Service Attempts:
Service was attempted on: ( _____ ) , ( _____ ) , ( _____ )
                             DATE    TIME        DATE    TIME       DATE    TIME
( _____ ) , ( _____ )
  DATE    TIME      DATE    TIME

## Description:
☐ Male        ☒ White Skin    ☐ Black Hair    ☐ White Hair    ☐ 14-20 Yrs.   ☐ Under 5'      ☐ Under 100 Lbs.
☒ Female      ☐ Black Skin    ☐ Brown Hair    ☐ Balding       ☐ 21-35 Yrs.   ☐ 5'0"-5'3"     ☒ 100-130 Lbs.
              ☐ Yellow Skin   ☐ Blond Hair                    ☒ 36-50 Yrs.   ☒ 5'4"-5'8"     ☐ 131-160 Lbs.
              ☐ Brown Skin    ☐ Gray Hair     ☐ Mustache      ☐ 51-65 Yrs.   ☐ 5'9"-6'0"     ☐ 161-200 Lbs.
☒ Glasses     ☐ Red Skin      ☒ Red Hair      ☐ Beard         ☐ Over 65 Yrs. ☐ Over 6'       ☐ Over 200 Lbs.

OTHER IDENTIFYING FEATURES: _____

State of Illinois    County of Cook

SERVED BY
LASALLE PROCESS SERVERS

Subscribed and sworn to before me,
a notary public, this ____ day of March , 20 05

NOTARY PUBLIC

OFFICIAL SEAL
ANDREW RAPHAEL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-17-2007

CHARTER MEMBER NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS.

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,      )
STATE OF ILLINOIS, *ex rel.*,  and )
CLEVELAND A. TYSON,            )
                               )
    Plaintiff,         )     No. 02 C 6074
                               )
v.                             )     Judge David A. Coar
                               )
AMERIGROUP ILLINOIS, INC.,     )     Magistrate Ian H. Levin
                               )
    Defendant.         )

## AMENDED NOTICE OF SUBPOENA FOR VIDEOTAPE DEPOSITION

To:    See Attached Service List

    **PLEASE TAKE NOTICE** that, pursuant to a subpoena served on April 1, 2005, a copy of which is attached, and the applicable Federal Rules of Civil Procedure, Defendant, Amerigroup Illinois, Inc., will take the videotape deposition upon oral examination of Barry S. Maram on April 20, 2005 at 9:30 a.m., at the offices of Freeborn & Peters, LLP, 311 S. Wacker Drive, Suite 3000, Chicago, Illinois, before a duly authorized court reporter.

    Respectfully submitted,

    **AMERIGROUP ILLINOIS, INC.**

    By:    _____
        One of Its Attorneys

Daniel J. Voelker, Esq.
Hillard M. Sterling, Esq.
Daniel C. Curth, Esq.
Catherine A. Miller, Esq.
Freeborn & Peters LLP
311 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
(312) 360-6000
Dated: April 13, 2005

RECEIVED
By_____

APR 14 2005

WELFARE LITIGATION
ATTORNEY GENERAL

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

United States of America,
State of Illinois, ex rel.,
Cleveland A. Tyson

     v.

Amerigroup Illinois, Inc.

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER:     02 C 6074

To:    Barry S. Maram
       Director
       Illinois Department of Public Aid
       100 W. Randolph
       10th Floor, Suite 300
       Chicago, IL 60601

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☒   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Freeborn & Peters LLP, 311 S. Wacker Dr., Suite 3000, Chicago, IL 60606 | April 20, 2005, 9:30 a.m. |

☐   YOU ARE COMMANDED to produce and permit inspection and copying of the documents or objects specified in the attached Rider.

| PLACE | DATE AND TIME |
|---|---|
| | |

☐   YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PLACE | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Daniel C. Curth_   Attorney for Defendant Amerigroup Illinois, Inc. | 3/31/5 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Daniel C. Curth, 311 S. Wacker Drive, Suite 3000, Chicago, IL 60606 (312) 360-6000

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

## CERTIFICATE OF SERVICE

The undersigned certifies that she caused copies of the foregoing **Amended Notice of**

**Subpoena for Videotape Deposition** and **Subpoena** to be served upon counsels of record listed

below via facsimile and U.S. Mail from the address of 311 S. Wacker Drive, Chicago, Illinois

before 5:00 p.m. on this 13th day of April, 2005.


Michael C. Rosenblat, Esq.
Michael C. Rosenblat, P.C.
2400 Ravine Way, Suite 200
Glenview, IL 60025

Michael I. Behn, Esq.
Futterman & Howard, Chtd.
122 South Michigan Avenue
Suite 1850
Chicago, IL 60603


Frederick H. Cohen, Esq.
David J. Chizewer
Katharine E. Burdic
Goldberg, Kohn, Bell, Black,
 Rosenbloom & Moritz, Ltd.
55 East Monroe Street
Suite 3700
Chicago, IL 60603

Chaka Patterson, Esq.
Assistant Attorney General
Office of the Attorney General
State of Illinois
100 West Randolph Street
Chicago, Illinois 60601


Michelle M. Fox, Esq.
Assistant United States Attorney
Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois 60604

Karen Konieczny
Assistant Attorney General
160 North LaSalle Street
Suite N-1000
Chicago, IL 60601


#822393

# EXHIBIT D

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

United States of America,
State of Illinois, ex rel.,
Cleveland A. Tyson

v.

Amerigroup Illinois, Inc.

**AMENDED SUBPOENA IN A CIVIL CASE**

CASE NUMBER: 02 C 6074

To:   Illinois Department of Public Aid
      c/o Nancy Shalowitz, General Counsel
      James R. Thompson Center - Floor 10
      100 W. Randolph
      Chicago, IL 60601

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the documents or objects specified in the attached Rider.

| PLACE | DATE AND TIME |
|---|---|
| Freeborn & Peters LLP, 311 S. Wacker Dr., Suite 3000, Chicago, IL 60606 | April 28, 2005, 10:00 a.m. |

☐ YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PLACE | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* Attorney for Defendant Amerigroup Illinois, Inc. | 4/14/05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Daniel C. Curth, 311 S. Wacker Drive, Suite 3000, Chicago, IL 60606 (312) 360-6000

# DEFINITIONS AND INSTRUCTIONS

In responding to and providing the above Documents Requested, the following Definitions and Instructions apply as if incorporated in each individual request:

## Definitions

A.    The definitions set forth in Rule 45 of the Federal Rules of Civil Procedure are hereby incorporated by reference.

B.    "Amerigroup Illinois" means Amerigroup, Illinois, Inc., f/k/a Americaid Illinois, Inc., d/b/a Americaid Community Care.

C.    "Amerigroup Corp." means Amerigroup Corporation.

D.    "Communications" or "communicated" includes statements, discussions or correspondence regardless of the form of transfer or transmission and any utterance heard by another Person, whether in person, by telephone or otherwise, as well as all mechanical or electronic information, sound recordings or transcripts thereof.

E.    "Concerning" means directly or indirectly mentioning or describing, consisting of, pertaining to, being connected with, regarding, relating to, or reflecting upon a stated subject matter.

F.    "Document" means the original or any draft of any kind of any written, recorded or graphic information or matter, however produced, reproduced, stored or preserved, whether in tangible form or electronically (including, but not limited to, storage in a computer system, computer hard drive, computer disk, software program, or computer database), of any kind or description, whether sent or received or possessed, and all copies thereof which are different in any way from the original, regardless of whether designated "draft," "confidential," "internal" or otherwise, and includes, but is not limited to, correspondence, e-mails, information saved in any

2

computer to which you (as defined herein) has access (including in any file, hard drive, or software disk), notes, memoranda, reports, photographs, recordings, diaries, minutes, telephone call logs, reports or summaries of negotiations or discussions, financial statements or information, calendars, appointment books, proposals, offers, working papers, timesheets, logs or materials similar to any of the foregoing, data in existence and stored in memory components, data compilations from which information can be derived or obtained and translated into reasonably usable form, drawings, blueprints, specifications, designs, or any other written, recorded or graphic material whatsoever.

G.    "IDPA" means the Illinois Department of Public Aid, including without limitation any of its employees, agents, representatives and attorneys.

H.    "IDPA Contract" means the Contract for Furnishing Health Services By A Health Maintenance Organization, dated April 1, 2000, attached as Exhibit A to the Complaint.

I.    "Person" or "Persons" includes any individual, firm, partnership, corporation, group, association, organization or other entity of any kind.

J.    "Preparation," when used in the context of the preparation of any document, means the process of creation, including without limitation the drafting, editing, or revising of any such document.

K.    "Regarding," "related to" or "relating to" means directly or indirectly mentioning or describing, consisting of, pertaining to, being connected with, regarding or reflecting upon a stated subject matter.

L.    "You" and "your" means the IDPA, as herein defined, and anyone acting on its behalf, including, but not limited to agents, employees, attorneys, and representatives.

3

M.     The term "MCO" means Managed Care Organization as that term is defined in the IDPA Contract.

N.     The term Medicaid MCO means and includes:

Amerigroup Illinois

Family Health Network

Harmony Health Plan

Humana Health Plan

United Healthcare of Illinois

### Instructions

1.     The instructions set forth in Rule 45 of the Federal Rules of Civil Procedure are hereby incorporated by reference.

2.     Each request is addressed to any documents within the possession, custody or control of the IDPA (as defined herein), including but not limited to documents within the possession, custody or control of the IDPA, whether or not secured from any other person, unless otherwise specifically stated, including but not limited to any officials, partners, shareholders, officers, directors, employees, attorneys, accountants, consultants, financial advisors, governmental advisors, regulatory advisors, investigators, or brokers to whom you have provided documents. You shall furnish all documents requested above that have been provided to you by any persons (as defined herein) who are obligated to give you access to, who have given you access to, or who have agreed to give you access to, documents or information, upon your request, whether or not such access to documents has, as yet, been given.

3.     You must secure, preserve, and produce all responsive electronic documents, including but not limited to information stored on servers, computer hard drives, software

4

applications, personal data assistants, e-mail, networks, and Web sites, in electronic form, including any and all meta-data and other data that is otherwise available from the documents and information in their electronic format.

4.     Whenever necessary to bring within the scope of any request anything that might otherwise be construed to be outside to be outside the scope of such request, the singular form shall be interpreted as including the plural; likewise, the plural form shall be interpreted as including the singular. Any reference to the masculine, feminine, or neuter gender shall be interpreted as including each gender not specifically included in the reference.

5.     If you cannot produce documents in response to a request or any part thereof, produce documents to the best extent possible and state the reason for your inability to provide a complete production. These requests are continuing in character so as to require you to produce responsive documentation as soon as they are created or possessed.

6.     If you object to any request or any part thereof, state your objection with specificity, including the particular part of the request to which you object, and respond to any remaining part of the request to the full extent that such production would not be subject to your objection. If you object to any of the Definitions and Instructions herein, you must do so by written response hereto. If any written response to a Definition or Instruction is not made prior to your response to these requests for production, it will be presumed that you do not object to any Definition or Instruction.

7.     The word "and" and the word "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of any request anything that might otherwise be construed to be outside its scope. The terms "each" shall be construed to include the word "every" and "every" shall be construed to include the word "each." The term "any"

shall be construed to include the word "all" and "all" shall be construed to include the word "any." The term "including" shall be construed to include the phrase "without limitation."

8.  In the event that a document is not produced because it is not presently in your possession or control (including but not limited to any document that has been lost or destroyed) or because of a claim or privilege, identify the document by providing the following information:

a.  the date or, if unknown, the approximate date;

b.  the type of document (e.g., letter, memorandum, e-mail)

c.  the author(s) and any recipient(s) or addressee(s);

d.  a general description of the subject matter;

e.  present location and custodian;

f.  any other description that may enable any person to locate the particular document;

g.  if the document is withheld on grounds of an assertion of privilege or work product protection, in addition to the above information, identify with particularity all of the reasons and bases for asserting the privilege or work product protection, including (i) the name of every person to whom such information or document has been delivered, (ii) the name of every person from whom such information or document originated, (iii) the subject matter and substance of such information and document, and (iv) the particular privilege claimed; and

h.  if the document has been lost or destroyed, identify and describe with particularity the date and circumstances surrounding the reasons for its loss or destruction, and identify the last known custodian of the document and each person who has knowledge of the loss or destruction of the document.

6

9.    If only a portion of any document is subject to an assertion of privilege, produce each and every portion of such document not containing the allegedly privileged matter, with the privileged portion masked or redacted if necessary, and provide the information set forth above with regard to any information withheld on grounds of privilege or work product protection.

10.    The above definitions govern the use of any and all of the terms in this Rider, including the definitions and instructions as well as the individual requests, whether or not those terms are capitalized.

11.    Respond to each request separately and independently, and organize and label the requested documents to correspond with the category of each request.

12.    Respond to each request with full and complete documents, including those portions that may contain information not specifically requested.

13.    If there are no documents responsive to any request, please state so in your response to that request.

14.    Unless specifically directed otherwise, produce all responsive documents from January 1, 1996 through the present.

#660323 v. 3.

7

# EXHIBIT E

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

United States of America,
State of Illinois, ex rel.,
Cleveland A. Tyson

      v.

Amerigroup Illinois, Inc.

**RULE 30(b)(6) SUBPOENA
IN A CIVIL CASE**

CASE NUMBER:    02 C 6074

To:    Illinois Department of Public Aid
       c/o Nancy Shalowitz, General Counsel
       James R. Thompson Center - Floor 10
       100 W. Randolph
       Chicago, IL 60601

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify as to the topics on the attached Rule 30(b)(6) Subpoena Rider at the taking of a videotaped deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Freeborn & Peters LLP, 311 S. Wacker Dr., Suite 3000, Chicago, IL 60606 | May 4, 2005, 9:30 a.m. |

☐   YOU ARE COMMANDED to produce and permit inspection and copying of the documents or objects specified in the attached Rider.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

☐   YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*  Attorney for Defendant Amerigroup Illinois, Inc. | 4/14/05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Daniel C. Curth, 311 S. Wacker Drive, Suite 3000, Chicago, IL  60606 (312) 360-6000

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

APR-15-2005   09:05       DIRECTOR MARAM                        312 755 8269        P.12/17

This subpoena is served on behalf of all defendants in the above-captioned case.

# PROOF OF SERVICE

|  | DATE | PLACE |
|--|------|-------|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|

# DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on
          DATE                                SIGNATURE OF SERVER

                                              ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D

**(c)   PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B)Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)      fails to allow reasonable time for compliance;

(ii)     requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no except or waiver applies, or

(iv)     subjects a person to undue burden.

(B)   If a subpoena

(i)      requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)     requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assure that the person to whom the subpoena is addressed will reasonable compensated, the court may order appearance or production only upon specified conditions.

**(d)   DUTIES IN RESPONDING TO SUBPOENA.**

1.    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

2.    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## RULE 30(b)(6) SUBPOENA RIDER

Pursuant to Fed. R. Civ. P. 30(b)(6), the Illinois Department of Public Aid ("IDPA") shall designate persons to testify regarding the following topics pursuant to the Definitions set forth at the end of this Rider:

1.    Any information regarding allegedly false or fraudulent records, claims, or statements provided to the IDPA by Amerigroup Illinois during each year, beginning with 1998.

2.    The manner in which the IDPA has calculated or determined capitation rates related to payments by the IDPA to Amerigroup Illinois in connection with the IDPA Contract or similar contracts or agreements during each year, beginning with 1998, as well as any changes to the manner in which those rates are calculated or determined.

3.    Any information regarding damages that the IDPA claims to have suffered or incurred as a result of allegedly false records, claims or statements submitted to the IDPA by Amerigroup Illinois.

4.    Any information regarding whether Amerigroup Illinois committed fraud, abuse or misconduct by allegedly discriminating against Eligible Enrollees, as defined in the IDPA Contract, on the basis of such individuals' health status or need for health services.

5.    Any information regarding whether Amerigroup Illinois committed fraud, abuse or misconduct by engaging in marketing activities that allegedly misled, confused and/or defrauded both Eligible Enrollees and the IDPA.

6.    Any information regarding whether Amerigroup Illinois committed fraud, abuse or misconduct by allegedly discriminating against Eligible Enrollees on the basis of their health status, their need for health services, or on any other improper basis.

7.    Any information regarding whether Amerigroup Illinois committed fraud, abuse or misconduct by making allegedly misleading and untruthful statements to Eligible Enrollees, Prospective Beneficiaries or Beneficiaries, as those terms are defined in the IDPA Contract, regarding the merits of Enrollment in Amerigroup Illinois' plan.

8.    Any information regarding whether the IDPA made or caused to be made payments to Amerigroup Illinois after learning that its certifications to the IDPA were allegedly false or less that completely truthful.

9.    Any contract, agreement, or understanding between Amerigroup Illinois and the IDPA, including without limitation all versions of the IDPA Contract.

10.    Any information regarding whether Amerigroup Illinois engaged in "cherry-picking" or adverse selection of Eligible Enrollees, as that term is defined in the IDPA Contract, to defraud the IDPA in order to lower its medical loss ratio and thus increase its profits.

11.    Any information regarding the relationship, if any, between capitation rates paid by the IDPA in connection with the Medicaid program and the enrollment of pregnant women into such a program for every year beginning in 1998.

12.    Any information regarding Amerigroup Illinois' actual or alleged enrollment or marketing conduct or activities, including without limitation any alleged knowledge of the IDPA concerning Amerigroup Illinois' enrollment of pregnant women or persons who may need or request treatment by specialists.

13.    Any analysis, assessment, determination, review, or calculation regarding the actual or potential impact of Amerigroup Illinois' alleged or actual marketing or enrollment conduct or activities on any of Amerigroup Illinois' actual or alleged costs or medical loss ratios.

14.     Any information regarding the quarterly certifications submitted to the IDPA by Amerigroup Illinois.

15.     Any information regarding whether Amerigroup Illinois' marketing practices violate its contractual obligations and/or federal regulations, and thus make its quarterly certifications false.

## DEFINITIONS

The following Definitions apply as if incorporated in each individual category set forth above:

A.     "Amerigroup Illinois" means Amerigroup, Illinois, Inc., f/k/a Americaid Illinois, Inc., d/b/a Americaid Community Care.

B.     "Communications" or "communicated" includes statements, discussions or correspondence regardless of the form of transfer or transmission and any utterance heard by another Person, whether in person, by telephone or otherwise, as well as all mechanical or electronic information, sound recordings or transcripts thereof.

C.     "Concerning" means directly or indirectly mentioning or describing, consisting of, pertaining to, being connected with, regarding, relating to, or reflecting upon a stated subject matter.

D.     "IDPA" means the Illinois Department of Public Aid, including without limitation its employees, agents, representatives and attorneys.

E.     "IDPA Contract" means the Contract for Furnishing Health Services By A Health Maintenance Organization, dated April 1, 2000, between Amerigroup Illinois and the IDPA, a copy of which is attached as Exhibit A to the Complaint.

F.    "Person" or "Persons" includes any individual, firm, partnership, corporation, group, association, organization or other entity of any kind.

G.    "Regarding," "related to" or "relating to" means directly or indirectly mentioning or describing, consisting of, pertaining to, being connected with, regarding or reflecting upon a stated subject matter.

H.    "State" or "State of Illinois" means the Government of the State of Illinois which is represented by the Office of the Attorney General of the State of Illinois in this case.

I.    "You" or "Your" means the IDPA, as defined herein.

LA SALLE PROCESS SERVERS LP
COST AND WITNESS FEES ACCOUNT
29 S. LA SALLE STREET, SUITE 956
CHICAGO, IL 60603

11037

2-15.710

DATE 4/14/05

PAY TO THE
ORDER OF Illinois Dept. Of Punic Aid $ 42.00/100

Forty Two Dollars — No cent, DOLLARS

THE NORTHERN TRUST COMPANY   VOID AFTER 90 DAYS

Northern Trust

MEMO

⑆071000152⑈ 0002234712⑆ 103774

# EXHIBIT F



LISA MADIGAN
ATTORNEY GENERAL
STATE OF ILLINOIS

WELFARE LITIGATION BUREAU
SUITE N -1000
160 NORTH LASALLE STREET
CHICAGO, ILLINOIS 60601-3103

TELEPHONE
(312) 793-2380

TELEFAX
(312) 793-3195

**Via Fax to (312) 360-6520**

August 1, 2005

Mr. Daniel C. Curth
Freeborn & Peters LLP
311 S. Wacker Dr., Ste. 3000
Chicago, IL 60606

Re: *U.S., St. of Ill. ex rel. Tyson v. Amerigroup*

Dear Mr. Curth:

I am in receipt of a Subpoena issued to the Illinois Department of Public Aid on July 29, 2005, returnable on August 12, 2005. The face of the Subpoena indicates that the IDPA was served in care of me at the Attorney General's Office. The Subpoena was hand-delivered to my office and not me personally.

Please be advised that neither I nor the Attorney General's Office are agents for service of process or other types of process under state law. *See* 735 ILCS 5/2-211. Accordingly, I will treat this as a courtesy copy of a Subpoena that you intend to serve on the Illinois Department of Healthcare and Family Services. If you had asked me whether I would accept service of the Subpoena, I would have told you that I could not accept service of the Subpoena, and I would have advised you to serve HFS directly, as you have done in the past.

Very truly yours,

JOHN E. HUSTON
Senior Assistant
Attorney General

**Freeborn & Peters LLP**

August 2, 2005

**RECEIVED**

By_____

AUG 0 3 2005

**WELFARE LITIGATION**
**ATTORNEY GENERAL**

**VIA FAX AND MAIL**

John E. Huston
Assistant Attorney General
160 North LaSalle Street, Suite N-1000
Chicago, IL 60601

*Attorneys at Law*

311 South Wacker Drive
Suite 3000
Chicago, Illinois
60606-6677
Tel 312.360.6000

Daniel C. Curth
Partner
Direct 312.360.6395
Fax 312.360.6575
dcurth@
freebornpeters.com


*Chicago*

*Springfield*

**Re:** *Tyson v. Amerigroup Illinois, Inc.*, No. 02 C 6074

Dear Mr. Huston:

I am in receipt of your letter of August 1, 2005, in which you assert that you are not authorized to accept service on behalf of the IDPA in this case. I am surprised and disappointed by your position in view of the fact that your appearance as IDPA counsel has been on file since March 18, 2005; you have filed numerous papers in this case on behalf of the IDPA; you have personally appeared in court several times to argue on behalf of the IDPA; and you have served as IDPA's counsel in connection with responding to our prior subpoenas and negotiating over the terms and conditions of the current subpoena. In light of these factors, not only do I believe that you are authorized to accept service on behalf of the IDPA, I believe that we are required to serve you, rather than the IDPA, with all papers relating to this case.

If you have any federal authority that supports your position, I would welcome it. If not, please be advised that we believe the subpoena to have been properly served and will seek to enforce it if the IDPA does not respond in a timely fashion.

Very truly yours,

Daniel C. Curth

DCC:lms

908156

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

UNITED STATES OF AMERICA, )
STATE OF ILLINOIS, *ex rel.,* and )
CLEVELAND A. TYSON, )
       )
       Plaintiffs, )
       ) No. 02 C 6074
       v. )
       ) Judge David A. Coar
AMERIGROUP ILLINOIS, INC., *et al.,* ) Magistrate Judge Cole
       )
       Defendants. )

**PROTECTIVE ORDER**

THIS CAUSE coming to be heard on the Motion of the non-party Illinois Department of Healthcare and Family Services ("HFS") for entry of a Protective Order, the parties and non-parties present and represented by counsel, and arguments of counsel having been heard, the Court finds:

1. That the Defendant, Amerigroup, Illinois, Inc. "AMG" has served numerous subpoenas on the non-party Illinois Department of Healthcare and Family Services f/k/a Illinois Department of Public Aid, and/or its Director, Barry S. Maram, and each subpoena has been quashed by order of the court;

2. That AMG has served another subpoena on HFS on July 29, 2005, seeking documents on the non-party HFS that is overbroad, unduly burdensome, and not relevant;

3. That AMG has served subpoenas on the non-party HFS near the fact discovery cut-off date in each instance, and

4. HFS is entitled to protection from further expense, annoyance, and undue burden caused it by this litigation.

IT IS HEREBY ORDERED:

1. The parties to this litigation are barred from taking any discovery on HFS, its officers and

employees, whether by formal written request or informal personal contact, except as permitted by the express terms of this Protective Order.

2. Non-party discovery on HFS may only be had under the following conditions:

a. A party may seek discovery from HFS (and not its officers or employees) that relates solely to the issue of damages. Such discovery request(s) must be narrowly drawn to the parties' theory(s) of damages so as to avoid undue burden and expense to HFS. The parties' theory(s) of damages must be articulated in writing, properly verified by the parties, and the verified written theories must be contemporaneously served on HFS with the discovery request. Any such discovery must have a reasonable time for HFS to produce a response to the request.

b. The requesting party must bear the cost of extraordinary document production, including costs of the retrieval of electronically stored data, or other costs associated with programming for a data compilation from HFS' electronic data storage facilities.

c. Nothing in this Protective Order prohibits HFS from challenging the discovery propounded upon it by any party by appropriate objection or other legal challenge as permitted by the Federal Rules of Civil Procedure.

d. Discovery materials, or information derived therefrom, provided by HFS in response to a proper request under this Order, shall be used solely by the parties for the preparation and trial of this lawsuit, and shall not be used for any other purpose, including without limitation any business or commercial purpose.

ENTER:

KAREN KONIECZNY
JOHN E. HUSTON
Assistant Attorneys General
160 North LaSalle Street, Suite N-1000
Chicago, IL 60601
(312) 793-2380
Attorneys for HFS

_____
JUDGE

DATE: _____

2

# EXHIBIT H

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| STATE OF ILLINOIS, *ex rel.*, | ) | |
| CLEVELAND A. TYSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 02 C 6074 |
| v. | ) | |
| | ) | Judge David A. Coar |
| AMERIGROUP ILLINOIS, INC., *et al.*, | ) | Magistrate Judge Cole |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) SS |
| COUNTY OF SANGAMON | ) |

## AFFIDAVIT OF DONALD PERRY

I, Donald Perry, being duly sworn upon oath, depose and state under penalty of perjury as provided by 28 U.S.C. §1746:

1. I am currently employed by the Illinois Department of Healthcare and Family Services ("HFS"). I am the Chief of the Bureau of Information Systems. I have been the Chief of the Bureau of Information Systems since April, 2000.

2. In my capacity as Chief of the Bureau of Information Systems, I am familiar with the 'HFS' email system and email back up and restore procedures.

3. Email is provided to HFS personnel through Novell GroupWise. The HFS GroupWise system is composed of 23 Post Offices that reside on specified servers based at the user's location. Each HFS GroupWise user is provided with an individual email account (or mailbox) in the Post Office appropriate to their location.

4. Backups of the GroupWise post offices are performed incrementally on a daily basis. A full backup of the post offices is performed over the weekend.

5. Incremental backup tapes are retained for one month. Full backup tapes are retained for one year.

6. In order to restore a user's email account, the requester of the of the restore must provide the Central Management Service's Help Desk with a date range, which is limited to one year from the current date, and the post office where the user's account resides. The CMS Help Desk then retrieves the appropriate backup tapes from off-site storage and restores the entire post office to a server with restricted access.

7. Because of the GroupWise structure, the entire post office must be restored to allow for retrieval of messages from an individual's email account. Investigation may then be conducted and any retrieved messages must be analyzed to determine relevance.

8. The backup procedures and the structural requirements of GroupWise will only allow for the post offices to be restored one week at a time. If multiple weeks and/or multiple post offices are requested, the process may need to be staged.

9. In a staged retrieval process, a post office for a certain period would be restored, analyzed, and then deleted from the restore environment to allow the next post office to be restored. This process would continue until all requested restores are completed.

10. This is an expensive process, both in terms of equipment and man power. A restore and review of the one year capability off the back up tapes would take an estimated six weeks for one individuals identified in the rider to the subpoena.

11. If an individual has left state service, and that individual's email account was inactivated within the current year, restores of that individuals email account is from the current date minus one year up to the inactivation date.

I hereby affirm that the statements set forth in this instrument are made upon my personal knowledge and are true and correct to the best of my knowledge.

DONALD PERRY

Subscribed and Sworn to before
me this 11th day of August, 2005.

NOTARY PUBLIC


"OFFICIAL SEAL"
JENNIE M CHAMPION
COMMISSION EXPIRES 04/27/09

2