# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF ILLINOIS, *ex rel.*, and CLEVELAND TYSON<br><br>Plaintiffs,<br><br>vs.<br><br>AMERIGROUP ILLINOIS, INC., and AMERIGROUP CORPORATION,<br><br>Defendants. | No. 02 C 6074<br><br>Judge David Coar<br>Magistrate Judge Jeffrey Cole |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

United States of America *ex rel.* Cleveland Tyson and the State of Illinois *ex rel.* Cleveland Tyson (the "plaintiffs") filed this *qui tam* suit under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.* and Illinois Whistleblower Reward and Protection Act ("Illinois Whistleblower Act"). 740 ILCS §§175/1 *et seq.* The FCA establishes civil penalties for any person who files "a false or fraudulent claim for payment or approval" by the United States. 31 U.S.C. § 3729(a)(1). The provisions of the Illinois Whistleblower Act are similar. 740 ILCS § 175/3. Under its contract with the Illinois Department of Public Aid ("IDPA"),[1] AMG-IL had to submit quarterly statements certifying that, to its knowledge, there had been no fraud, abuse, or misconduct on the part of its employees, providers, or representatives. The contract defined "abuse" as "a manner of operation that results in excessive or unreasonable costs to the Federal

---

[1] IDPA is now called the Illinois Department of Healthcare and Family Services.

and/or State health care programs." (*Second Amended Complaint*, Ex. A, at 2). The Second Amended Complaint alleges that AMG-IL did not report its limited enrollment practices in its quarterly certifications, which were a precondition to its receiving payment from the federal and state programs involved. This omission allegedly resulted in and constituted false or fraudulent claims for payment in violation of the applicable statutes.

The Relator is a former employee of AMG-IL, a health maintenance organization operating in the state of Illinois. On March 30, 2000, AMG-IL entered into a contract with IDPA) to provide health care services to individuals, who are eligible for Medicaid. Under the contract, AMG-IL was paid per enrollee, with the amount predetermined by actuarial data of the population group to be served. According to the Second Amended Complaint, AMG-IL engaged in systematic discrimination against the potential enrollees based upon their health status: it provided healthcare services to a group of healthier, less expensive patients than the parties intended under the terms of the contract. As a result, AMG-IL spent less of the predetermined amount it was paid and retained a greater profit. IDPA, on the other hand, had to provide more healthcare and spend more money than it had bargained for.

It is alleged that AMG-IL pursued this scheme through several strategies. For example, it allegedly refused to enroll pregnant women in its plan. In March of 2002, the IDPA discovered that there were far fewer live births to Medicaid beneficiaries enrolled in AMG-IL's plan than those who were not enrolled. It is also alleged that AMG-IL discouraged prospective enrollees who needed specialized medical care and retroactively disqualified prematurely born infants from its plan.

The plaintiffs have asked me to exercise what they properly characterize as the "wide discretion" and "broad case management powers" a court has in regulating discovery to compel an answer to a

contention interrogatory, more than a month in advance of the expert discovery phase of the case. The interrogatory seeks disclosure of the several potential counter-theories of damages that the defendants are admittedly considering: [2]

> Describe with specificity AMG-IL's theory or theories and method or methods for calculating damages in the event that (a) AMG-IL is found liable in this case for discriminating against women who were pregnant and (b) AMG-IL is found liable in this case for discriminating against people with serious health conditions (other than pregnancy), such as cancer, HIV, liver cirrhosis, or being a substance abuser.

As the plaintiffs have hypothesized, there are several methods that AMG-IL might argue the jury should employ to calculate damages. One is the difference between what the IDPA contracted to receive and what AMG-IL actually provided. But, because AMG-IL did not keep a record of those individuals it avoided enrolling in its plan, the parties are left to compare the amount of care AMG-IL actually provided with the amounted of care the parties expect AMG-IL would provide. The plaintiffs contend that such a measurement might be made by comparing the level of services AMG-IL provided with:

> 1) the level of services in the general Medicaid population
> 2) the level of services other Illinois Medicaid managed care organizations provided
> 3) the level of services Amerigroup's managed care organizations provided in other states

The plaintiffs claim that basic "fairness" and "efficiency" – those ineffable and elusive goals that drive so much of the Federal Rules of Civil Procedure – demand that AMG-IL disclose its damage theories and methodologies now, rather than waiting until expert discovery, which begins after the close of discovery on October 31, 2005. Immediate disclosure is essential, the plaintiffs contend, so that they can "begin

---

[2] At the oral argument, counsel for AMG-IL represented that there are presently under consideration what he described as "several viable theories" of damages, but that none has yet been decided on. He represented, as he did in his Response Memorandum, that during expert discovery the plaintiffs would have access to everything on which the defendants' expert relied.

analyzing the data before expert discovery begins in order to be able to comply with the current schedule for providing an expert report." (Motion To Compel at 3). Without the information, the plaintiffs insist that they will be forced to embark on a broad-based, "very burdensome," "fishing expedition for sensitive and closely-guarded information from third parties," including other managed care organizations in Illinois and Amerigroup's healthcare plans in other states. (*Id.* at 2-4; Reply Memorandum at 4). So massive and diffuse would the effort be that the plaintiffs might be required "to seek healthcare encounter information for *every person* on Medicaid in Illinois during the years in question." (Motion to Compel at 2-4)(Emphasis supplied).

Granting the motion, the plaintiffs argue, would obviate the need for much, if not all, of this intrusive discovery. The defendants have objected on the ground that disclosure in advance of expert discovery is premature, would violate the work product privilege, and would impermissibly disclose the opinions of one or more non-testifying experts in violation of Rule 26(b)(4)(B), which forbids disclosure in pretrial discovery of the facts found or opinions formulated by an opponent's non-testifying experts except upon a showing of exceptional circumstances. *Braun v. Lorillard, Inc.*, 84 F.3d 230, 236 (7th Cir. 1996).

If, notwithstanding AMG-IL's answer to the interrogatory, the admittedly broad based, expensive, and burdensome discovery directed to third parties that the motion is designed to eliminate, would in all likelihood occur, sound discretion mandates that the motion be denied. For the reasons discussed below, granting the motion would not, under the circumstances of this case, result in the fairness and efficiencies that are the sole justifications for the motion. Moreover, granting the motion would disrupt the orderly flow

of discovery contemplated by the Federal Rules of Civil Procedure[3] and would effectively accelerate expert discovery, thereby substituting a new schedule in place of that carefully crafted set by Judge Coar. This is not to say that under other circumstances than those presented here, a court would be powerless to require a defendant to answer a contention interrogatory relating to its theory of damages. But this is not the case for what would be a unique exercise of that discretion.

## ANALYSIS

### A.
### Granting The Relator's Motion Will Not Result In The Fairness And Efficiency That The Motion Claims Justifies Its Granting

According to the theory of the motion to compel, the plaintiffs can be spared needless effort and energy in pursuing discovery dead-ends if AMG-IL tells them what counter-damage theory it plans to employ. Whatever superficial allure that argument might have had in the abstract vanished when, at the oral argument, AMG-IL's counsel represented that although there were "several viable alternative damage theories" under consideration, none had been selected. Consequently, even if AMG-IL were ordered to disclose the alternative theories, the very thing the plaintiffs fear – namely, unfocused discovery proceeding down multiple paths, none of which would necessarily lead to any end – would come to pass. Rather than being able to husband their time, energy and resources in pursuit of a single theory, they would be compelled to assess all of them. In short, granting the motion would not achieve the ends sought by the motion and would, in all likelihood, ensure a fifth request for an extension of discovery given the breadth

---

[3] *Compare Nelson v. Ipalco Enterprises, Inc*, No. IP02477CHK, 2005 WL 1924332, *8 (S.D.Ind. Aug. 11, 2005)(There is an "orderly development of [a] case, in which plaintiffs should be expected to come forward first with any theory of damages and supporting expert testimony, followed by a response from defendants, and an opportunity for rebuttal.").

5

of the inquiries that would be undertaken and the inevitable objections from the third parties, whose propriety and privacy interests would admittedly be affected by such discovery.[4] And to what end?

The answer to the interrogatory would not be binding on the defendants and could be abandoned during the course of expert discovery, thereby defeating the goals of the interrogatory.[5] As the Advisory Committee notes to Rule 33(b) make clear, AMG-IL's answer to the interrogatory will not "chain" it to whatever "contention or theory" it then held. "The general rule governing the use of answers to interrogatories is that under ordinary circumstances they do not limit proof." *Id.* And while there may be exceptional circumstances where a party's reliance on an answer may cause such prejudice that the court will hold the answering party to its answer, "the interrogating party will ordinarily not be entitled to rely on the unchanging character of the answers he receives and cannot base prejudice on such reliance." *Id.; see also Motson v. Franklin Covey Co.*, No. Civ.03-1067 RBK, 2005 WL 1541023, *4 (D.N.J. June 30, 2005); *Cable & Computer Technology, Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 651 (C.D.Cal. 1997); *Sperling v. Hoffman-LaRoche, Inc.*, 924 F.Supp. 1396, 1412 (D.N.J. 1996); *Lewis v. Tully*, No. 81 C 3833, 1984 WL 2745, *10 (N.D.Ill. June 15, 1984)(Marshall, J.); 8A Charles A.

---

[4] The breadth of discovery that would, in all likelihood, be needed to pursue alternative damage theories, could, although the plaintiffs are careful not to say so, equal or eclipse the discovery thus far taken. (*Motion to Compel*, at 2-4; *Relator's Supplemental Memorandum in Support of its Motion to Compel*, at 7-8).

[5] It is thus clear that even if AMG-IL were forced to disclose its tentative damage theories before expert discovery, the Plaintiffs would gain nothing in terms of the efficiency it so strongly espouses. In this regard, from a practical standpoint, a court may order that answers to contention interrogatories be deferred until after other designated discovery has been completed. *McCarthy v. Paine Webber Group, Inc.*, 168 F.R.D. 448, 450 (D.Conn. 1996); *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 652 n.2 (D.Md. 1997); *see also* 7 James Wm. Moore *et al.*, Moore's Federal Practice § 33.02[2][b] (3d ed., 2004 supp.).

Wright, Arthur R. Miller & Richard Marcus, Federal Practice and Procedure §2181 at 343-44 (2nd Ed. 1994). At oral argument, the plaintiff's counsel conceded that even if AMG-IL answered the interrogatory, it would not be bound to any one of the "several viable" theories that might be included in the answer.[6]

But even if the discovery could be completed before expert discovery began, it would serve no useful purpose, for within a matter of weeks or days, the plaintiffs will be provided with the defendants' expert report which would be fully revelatory of the theory or theories actually to be relied on and would render the plaintiffs' discovery efforts exercises in futility. One of the primary authorities relied on by the plaintiffs, *Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 WL 729295 (N.D.Ill. Dec. 7, 1995), stressed that "[e]fficiency prescribes that the parties should not be obligated to answer contention interrogatories repeatedly," and that because one of the chief purposes of contention interrogatories is to narrow the issues for trial, "fairness dictates that parties not be forced to prematurely take a position, which would force an artificial narrowing of the issues, instead of an informed pairing down." *Id.* and n.3.

Since AMG-IL would not be bound by the answer to the interrogatory proposed by the plaintiffs, there would, at best, be an evanescent and illusory narrowing of the issues, instead of the informed paring down that will come within a few weeks when expert discovery begins. Under these circumstances, neither fairness nor efficiency would be served by granting the motion to compel.

---

[6] *See also* 7 James Wm. Moore *et al.*, Moore's Federal Practice § 33.75 (3d ed., 2004 supp.) ("When interrogatories asking for the factual basis of its allegations have been properly posed, however, courts do not usually limit the responding party's proof at trial."); 8A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 2181 (2d ed. 1994) ("To hold [a party] to [its] early understanding [of its case] . . . would be quite wrong. . . . it is not irrevocably bound to the answer it gives."). The principle is even more compelling when applied in the context of this case where the tentative theories would precede decisive expert disclosure by a matter of weeks.

## B.
## The Cases On Which The Plaintiffs Rely
## Do Not Support Their Position

Despite the industry and effort of plaintiffs' counsel, they have admittedly been able to find only two cases involving damage contention interrogatories propounded by plaintiffs to defendants. (Reply Memorandum at 5). Neither case supports the relief the plaintiffs have requested.[7] The first is *Ty, Inc. v. Publications International Ltd.*, 99 C 5565, 2003 WL 21294667 (N.D.Ill. June 4, 2003), a copyright and trademark infringement suit in which the district court granted summary judgment to the plaintiff and the Seventh Circuit reversed. On remand, the defendant claimed that it was entitled to additional discovery to pursue its trademark misuse defense, and that damages discovery had not been concluded. *Id.* at *5 Judge Zagel concluded that the damage discovery was not open, and in support of that conclusion, noted in passing that during discovery the "parties exchanged interrogatories and document requests concerning liability and damages." *Id.*

"Judges expect their pronunciamentos to be read in context. . . ." *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005)(Posner, J.). *Cf., Cohens v. Virginia*, 19 U.S. 264, 399 (1821)(Marshall, C.J.). Given the context of Judge Zagel's comments, it is idle to say that the defendant was "required to answer interrogatories related to damages." (Reply Memorandum at 5). Judge Zagel was doing nothing more than reciting historical fact, not approving what had occurred. For all that appears, there was no objection

---

[7] The balance of the plaintiffs' briefs are largely devoted to the irrecusable principles that contention interrogatories are permissible, and that a court has broad discretion in determining the timing of discovery and in overall case-management techniques. "But discretion is never without limits", *System Federation No. 91, Ry. Employees Dept. v. AFL-CIO*, 364 U.S., 642, 648 (1961), and "general propositions do not decide concrete cases." *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting). *See also Daubert v. Merrell Dow*, 509 U.S. 579, 598 (1993)(Rehnquist, C.J., concurring in part and dissenting in part); *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005)(Posner, J.).

raised to whatever the interrogatory the defendant had propounded, and it is impossible to tell what the interrogatory was or the circumstances of its issuance. In short, the issue in this case was not before Judge Zagel, and *Ty* is not even marginally helpful, for prior cases have precedential value only when there has been a deliberative consideration of the issue at hand. *Sub-silentio* or assumptive resolution is not enough. *See, e.g., City of Kenosha v. Bruno*, 412 U.S. 507, 512-13 (1973); *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1090 (3d Cir. 1976); *State v. Dehaney*, 803 A.2d 267, 282 (Conn. 2002).[8]

The second case is *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F.Supp.2d 923 (N.D.Ill. 2003)(Bobrick, M.J.), a copyright infringement suit. Fairly read, like *Ziemack v. Centel Corp.*, the case emphasized that many damage related questions are more appropriately dealt with during expert discovery than through contention interrogatories. *See also Lawrence E. Jaffey Pension Plan v. Household International, Inc.*, 2004 WL 2108410 at *2 (N.D.Ill. 2004)("It is unreasonable for defendants to expect the exact damage formula from initial disclosures in a securities fraud action where expert analysis is undoubtedly necessary.").[9]

Under the copyright law involved in *Ocean Atlantic*, the owner had the right to recover actual damages and any resulting profits of the infringer attributable to the infringement. *Id.* at 927. The court concluded that the plaintiff's discovery efforts, "even those aimed at defendant's financial and business records" were outside the scope of legitimate discovery on the issue of plaintiff's damages and lost profits

---

[8] The same is true of *Holley v. Pansophic Systems, Inc.*, 1993 WL 436390 at *4 (N.D.Ill. 1993).

[9] While *Ziemack* required the plaintiff to provide "the *fact* of their damages," even if the only such underlying facts are the raw data on stock prices, the court stressed the general inappropriateness of premature damage theory interrogatories where damage issues "will be more appropriately dealt with by experts at a later date." 1995 WL 729295 at *2. The court rejected the attorney work product objection to production. *Id.* at *2 and *4, n.5.

9

resulting from the alleged infringement. The court noted that the proper damages calculation can come through testimony of experts in the relevant field and that it "is only through this evidence that the value of these preliminary drawings could be readily ascertained." *Id.* at 929. Indeed, the court recognized that "relying on expert testimony is the best solution to the current discovery dispute" if the plaintiff was seeking damages beyond a particular specified kind. While refusing to allow discovery of the defendant's "profits and revenues," *id.* at 930, the court did require the defendant to state "what its position is on damages claimed by Ocean Atlantic," and "what it believes [plaintiff] is entitled to as damages." *Id.* at 930-31.

Beyond these two phrases, the opinion offered no explanation for and cited nothing in support of what was obviously a narrow resolution of a discrete, factually cabined dispute. It did not did not even set forth the specific interrogatory. The case, in any event, is not comparable to the present one. The plaintiff in *Ocean Atlantic* was not seeking – and did not obtain – the defendant's various alternative, tentative damage theories and methodologies within weeks of the beginning of expert discovery. There is a vast difference between stating a "position" on the damage claim of a plaintiff and "what it believes [the plaintiff] is entitled to as damages" and making the kind of comprehensive disclosure of alternative and tentative damages theories and methodologies sought by the plaintiffs.

## C.
### The Nature And Purpose Of Contention Interrogatories

The assertion that the "damages interrogatory that plaintiffs have served is typical," (Supplemental Memorandum at 3), is belied by the absence of cases supporting the plaintiffs' position and by the commendably candid admission of plaintiffs' experienced counsel at an earlier phase of the case, when in response to a question, he conceded that he had never propounded such an interrogatory *against a*

*defendant* before. This is not to say that contention interrogatories relating to damage theories are atypical. They are not. *See, e.g., Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 420 (7th Cir. 2005)(Failure of counter-plaintiff to respond to "contention interrogatory with a description of its damages theory and the proof to be employed" justified exclusion of evidence); *First Health Group Corp. v. United Payors and United Providers*, 1999 WL 515499 (N.D.Ill. 1999)(Moran, J.)("The whole purpose [of defendant's contention interrogatory] was to get out on the table plaintiff's damages contentions so that the defendant could explore them during the discovery period."); *Lawrence E. Jaffey Pension Plan v. Household International, Inc.*, 2004 WL 2108410 at *1 (N.D.Ill. 2004); *Ziemack*, 1995 WL 729295.[10]

Nor is it to say that there is a permissible asymmetry in favor of defendants. There is not, and under appropriate circumstances, damage contention interrogatories can be directed at defendants. The difficulty is that the reasons that the plaintiffs have offered to justify their interrogatory to AMG-IL do not withstand analysis. Moreover, contention damage interrogatories to defendants seem inappropriate where, as here, there is no independent claim for damages by the defendant or no claim or articulated position to which a contention interrogatory can be directed prior to expert discovery. Whether a defendant will advance a

---

[10] *See also* n.13, *infra*. Indeed courts have chided defendants for not using damage interrogatories. *See, e.g., U.S. ex rel. Pogue v. Diabetes Treatment Centers of America*, 2004 WL 2009413 at *6 (D.D.C. 2004); *Koch v. Koch Industries, Inc.*, 6 F.Supp.2d 1192, 1199 (D.Kan. 1998). And of course, a computation of any category of damages claimed by the disclosing party is required by Rule 26(a)(1)(C). *See Review Directories, Inc. v. McLeod USA Publishing Co.*, 2001 WL 34054519 (W.D.Mich. 2001). *Compare Hickman v. Taylor*, 329 U.S. 495, 513 (1947)(Denial of production of certain documents on work product ground need not unduly hinder a party in the preparation of his case since "[s]earching interrogatories" directed to appropriate individuals can be employed).

counter-theory of damages is, in that context, an uncertain and contingent event that may not occur at all.[11]

Contention interrogatories that seek damage theory and methodology information from a plaintiff almost invariably will comport with the requirements of Rules 26(b)(1) and 33(c) of the Federal Rules of Civil Procedure, seeking as they do, information about an inherent element of the claim.[12] Rule 33(c) permits interrogatories that "relate to any matters which can be inquired into under Rule 26(b)(1)." That Rule permits discovery regarding any matter "that is relevant to the claim or defense of any party...." *See* 4J Moore's Federal Practice, ¶26.07[1] (1994)(Concept of relevance for discovery purposes is broadly and liberally construed, but is not without its limits). *Id.* at 26-19-120.

Similarly, where a defendant files a counterclaim, it must prove damages, and a contention interrogatory directed to the theory and amount of damages is likewise relevant and appropriate. *Zenith Electronics*, 395 F.3d at 420. The claim need not be a damage claim; it can relate to any claim or defense advanced by the defendant. *See, e.g., United States v. Boyce*, 148 F.Supp.2d 1069, 1084-85 (S.D.Cal. 2001)(contention interrogatory aimed at learning the basis for the defendant's arguments that the

---

[11] In other contexts where claims involve uncertain and contingent events that may not occur as anticipated or not at all, courts have not hesitated to conclude that the claims were not ripe. *See Lincoln House, Inc. v. Dupre*, 903 F.2d 845 (1st Cir. 1990).

[12] *See, e.g. Sanders v. District of Columbia*, 2002 WL 648965 (D.D.C. 2002)(theory of damages interrogatory); *Moore U.S.A., Inc. v. The Standard Register Co.*, 2000 WL 876884 at *4 (W.D.N.Y. 2000)(same); *Thomas & Betts Corp. v. Panduit Corp.*, 1999 WL 261924 at*1 (N.D.Ill. 1999)(Moran, J.)(interrogatory related to information defendant necessarily must have to test plaintiff's damage theories); *Point Productions A.G. v. Sony Music Entertainment*, 2002 WL 31856951 at *4 (S.D.N.Y. 2002)(interrogatory addressed to plaintiff's damages theory); *In re Rezulin Products Liability Litigation*, 223 F.R.D. 109 (S.D.N.Y. 2004). *See also CS Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) (Reversible error not to permit a defendant to obtain from the plaintiff information to test the plaintiff's damage theory and to present an alternative and lower calculation of damages).

government's computation of tax deficiencies was incorrect).[13] And a plaintiff may pose interrogatories to a defendant that will help it to sustain its own damage claim. *See* 7 James Wm. Moore, *et al.*, Moore's Federal Practice §33.77 (3d. ed., 2004 supp.).[14]

But where, in advance of expert discovery, a plaintiff seeks to inquire about a damage theory that may never come into being, and that is to be used essentially for rebuttal, different questions are presented. In this context, the contention interrogatory would seem premature and outside the ambit of what a contention interrogatory is designed to do: "Contention interrogatories ask a party 'to indicate *what* it contends,' 'whether it makes some specified contention,' 'to state all the *facts* on which it *bases* some specified contention,' 'to state all the *evidence* on which it *bases* some specified contention,' 'to take a position, and then to explain or defend that position, with respect to *how the law applies to facts*,' or 'to spell out the legal basis for, or theory behind, some specified contention.'" *In re Sunrise Securities Litigation*, 130 F.R.D. 560, 590 n.104 (E.D.Pa. 1989) (Emphasis in original). A contention interrogatory permits inquiry into matters "relating to an issue necessarily in the case." *Micro Motion, Inc. v. Kane Steel*

---

[13] At oral argument the plaintiffs' counsel, in response to a question I asked, attempted to say that the proposed interrogatory should also be read as seeking an explanation of the defendants' denial of liability, as well as seeking disclosure of the defendants' alternative damage theories and underlying methodologies. The text of the interrogatory and the specificity of the plaintiffs' motion and memoranda plainly demonstrate that the interrogatory is not directed to that end. Just as arguments can not be raised for the first time in a reply brief, *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004), they cannot be raised for the first time in oral argument.

[14] Thus, a plaintiff may seek information from a defendant on allegedly ill-gotten gains, *Shapo v. Engle*, No. 98 C 7909, 2001 WL 629303, *4 (N.D.Ill. May 25, 2001)(fraudulent conveyance proceeds); *National Business Systems, Inc. v. AM International, Inc.*, 109 F.R.D. 172, 173 (N.D.Ill. 1986), or net worth or revenue in the context of punitive damages. *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 550 (N.D.Ind. 1991); *CEH, Inc. v. FV Seafarer*, 148 F.R.D. 469, 471, *aff'd*, 153 F.R.D. 491 (D.R.I. 1993).

Co., Inc., 894 F.2d 1318, 1326 (Fed.Cir. 1990). Unlike a plaintiff's damage theory, which is necessarily in the case, a defendant's potential or tentative counter-damage theory that has not been selected and may never be, would not seem to qualify. Here, the defendants are considering "several viable" alternative damage theories. AMG-IL is not required to arbitrarily select one or to speculate which theory it might ultimately choose, simply because they have been asked to do so. *See Stabilus v. Haynesworth, Baldwin, Johnson and Greaves, P.A.*, 144 F.R.D. 258, 263 (E.D.Pa. 1992); *Rodrigues v. Hrinda*, 56 F.R.D. 11, 14 (W.D.Pa. 1972).

### D.
### The Importance Of Adherence To Discovery Deadlines

Complex cases such as this one must have enforceable discovery deadlines. *Harris v. Owens-Corning Fiberglass Corp.*, 102 F.3d 1429, 1433 (7th Cir.1996). In part, they are, to use Justice Holmes phrase, a practical concession to the shortness of life. Without them, there would be no end to litigation, and without them there could not be the necessary expedition and coordination of a highly complex process. *See United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir.1994). The parties had a right to expect that having been set, those deadlines will be honored. Hence AMG-IL was entitled to rely on the discovery schedule and assume it would not have to craft a damages theory until expert discovery. *Nelson v. Ipalco Enterprises, Inc*, No. IP02477CHK, 2005 WL 1924332, *8 (S.D.Ind. Aug. 11, 2005).

To grant AMG-IL's motion would be to disrupt the discovery schedule set by Judge Coar on August 31, 2005, when he granted the plaintiffs' combined motion for an extension of the discovery deadlines.. At that time, fact discovery was set to close on October 31, 2005, with expert discovery to

be completed by January 16, 2006. This schedule came in the wake of four motions by the plaintiffs for extensions of discovery deadlines – the original fact discovery deadline having been November 15, 2004, set on December 16, 2003. So, the present deadline represents approximately one year's worth of additional discovery time that has been granted to the Plaintiffs.

Significantly, in its various requests for extensions, there was never a hint that additional discovery would be needed in the event the defendants refused to provide the kind of information that the plaintiffs now claim is essential to their own preparation. *Compare Ty, Inc. v. Publications International Ltd.*, 2003 WL 21294667 (N.D.Ill. 2003)(Zagel, J.)("[P]erhaps the most telling evidence that discovery included damages is the fact that when Ty moved for summary judgment on the issues of damages, PIL never objected on the ground that it needed additional discovery."). Judge Coar had expressed his reluctance to change those deadlines on at least two separate occasions. (*See Minute Order of October 4, 2004; Plaintiffs' Alternate Request for Relief* (March 28, 2005); Ex. A). The present deadlines, then, are a product of Judge Coar's careful consideration of the Plaintiffs''s difficulties and his accommodation of the competing considerations.

There is no principled reason why this case should be treated differently for expert discovery purposes than any other complex case, where a defendant has the right to decide whether it wants to present an alternative damage theory, and expert discovery proceeds in a prescribed and orderly fashion. The plaintiffs have provided no authority that suggests that there is a right to demand disclosure of a defendant in advance of actual revelation of the theory that will be employed so that a plaintiff can have more time than that allowed by the expert discovery schedule to consider how it will respond at trial. To grant a plaintiff the opportunity for an early peek at the theory seems to be the antithesis of "fairness."

15

## E.
## The Defendants' Representations That There Will Be Full Compliance With The Disclosure Requirements of Rule 26

Rule 26(a)(2)(B) requires disclosure of "a complete statement of all [expert] opinions to be expressed and the basis and the reasons therefore." The Rule, in essence, recognizes that secrecy is not congenial to truth-seeking, and that complete disclosure during expert discovery is essential to both sides' ability to prepare their cases adequately and efficiently and to prevent one party from blind-siding the other. Noncompliance with the expert disclosure rules results in the exclusion of testimony of witnesses at trial unless non-disclosure was justified or harmless. *Nutra Sweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 785 (7th Cir. 2000).

In his response and reply briefs and at oral argument, counsel for AMG-IL insisted that the plaintiffs' motion was unnecessary, since they would be given "all of the data" underlying the opinions of testifying experts at the appropriate time. (Response at 7). In the event those representations are not adhered to, the plaintiffs will have adequate opportunity to invoke the substantial authority and flexibility a court has in dealing with a party's deviations from the rules governing expert disclosure. *See Industrial Enclosure Corp. v. Northern Insurance Corp. of New York*, 2000 WL 1810087 (N.D.Ill. 2000)(Kennelly, J.); *Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 2005 WL 1300763 (N.D.Ill. 2005)(Moran, J.); *Nelson v. Ipalco Enterprises, Inc.*, 2005 WL 1924332 (S.D.Ind. 2005).

## F.
## The Defendants' Objections To The Motion To Compel

AMG-IL maintains that it cannot be forced to reveal its damage theories at this point because, it

says, there are only two sources for such a theory at this stage: counsel's own mental impressions and the preliminary work of a non-designated consultant. AMG-IL argues that both are protected as work product under Fed.R.Civ.P. 26(b) and thus, can only be discoverable at this stage in conformity with Rule 26(b)(3), which provides that:

> a party may obtain discovery of documents and tangible things otherwise discoverable . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The Rule forbids discovery of "documents and tangible things," except on a necessary showing of need. It does not include theories, facts and methodologies pertaining to damage claims. Phrased differently, Rule 26(b)(3), while it prohibits discovery of protected documents, does not prohibit disclosure of the underlying facts.

The second objection to the interrogatory is that it would violate the work product privilege since counsel for AMG-IL has been involved in the discussions about damage theory, if not their actual formulation. Many courts have rejected this kind of overly-facile objection to contention interrogatories that seek the factual basis for positions. *See, e.g., Rusty Jones, Inc. v. Beatrice Co.*, 1990 WL 139145 (N.D.Ill. 1990)(Williams, J.); *United States v. District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America*, 1992 WL 208284 at *12 (S.D.N.Y. 1992); *SEC v. Morelli*, 143 F.R.D. 42, 48 (S.D.N.Y. 1992); *National Union Fire Insurance Co. of Pittsburgh v. FDIC*, 1995 WL 146278 at *3 (D.Kan. 1995). *See also Lawrence E. Jaffey Pension Plan v.*

17

*Household International, Inc.*, 2004 WL 2108410 at *2 (Ordering the plaintiffs to provide a "general theory of damages," while agreeing that actual preliminary damages calculations are not discoverable at the early stage of the case); *Ziemack*, 1995 WL 729295 at *2, *4, n.5 (the court rejected the attorney work product objection and required the plaintiff to provide "the *fact* of their damages"). *Cf. Hickman v. Taylor*, 329 U.S. 495, 504, 513 (1947)(Although documents prepared by petitioner's counsel are protected work product, the facts are not and "[s]earching interrogatories" directed to petitioner's counsel will "serve to reveal the facts in [his possession] consistent with public policy.").

This leaves Rule 26(a)(4)(B), which provides that:

> [a] party may, through interrogatories or by deposition, discover facts known or opinions held by an expert *who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial*, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means. (Emphasis supplied).

The rule is unrelated to the work product privilege and protects discovery of information held by non-testifying experts for reasons entirely independent of the work product doctrine. *Vanguard Savings & Loan v. Banks*, 1995 WL 71293 at *2 (E.D.Pa. 1995).

There are two difficulties with AMG-IL's reliance on Rule 26(a)(4)(B). First, the *ipse dixit* in the response brief that the damage theories under consideration could only have come from the defendants' counsel or a non-testifying expert is, at least facially, demonstrably mistaken. (Significantly, the response brief does not say that in fact these are the sources, only that they could not have come from any others). It is certainly possible that AMG-IL, an undoubtedly sophisticated business entity, could be the author of the damage theories under consideration. Second, it is impossible to know with the necessary degree of

assurance that the creator of the theories qualifies for protection under the Rule. Merely describing someone as "a non-testifying expert" is not enough. *Aptargroup, Inc. v. Owens-Illinois, Inc.*, No. 02 C 5058, 2003 WL 21800083, *2 (N.D.Ill. July 25, 2003)(Moran, J.).

To ensure that the requirements of the Rule are satisfied (i.e. the expert was retained or specially employed in anticipation of litigation or preparation for trial and that he or she is not expected to be called as a witness at trial) various methods have been employed. For example, the party opposing discovery has produced the consultant in question for an *in camera* interview. *St. Paul Mercury Insurance. Co. v. Williamson*, 986 F.Supp. 409, 415 (W.D.La. 1997), *aff'd in part, vacated on other grounds*, 224 F.3d 425 (5th Cir. 2000). In other instances, the party opposing discovery has made a rather detailed showing as to its hiring of the consultant, and its expectation of whether that consultant would testify. *Archer v. Grynberg*, 951 F.2d 1258 (10th Cir. 1991)(unpublished, *see* 10th Cir. Rule 36.3). Here, all we have are legal conclusions from AMG-IL's lawyer. But, the plaintiffs have not raised the possible insufficiency of AMG-IL's unamplified conclusion that its tentative theories in fact came from an individual who qualifies for protection under Rule 26(b)(4)(B), and thus the issue is forfeited. *United States v. Johnson*, 415 F.3d 728, 730 (7th Cir. 2005).[15]

### G.
### The Compromise Interrogatory

The plaintiffs' motion seeks as alternative relief, an order compelling AMG-IL to answer an interrogatory in substantially the same form as the one answered by the plaintiffs. *See supra* at 3. The

---

[15] This is not in anyway to question the integrity of the defendants' counsel. But one cannot tell from his legal conclusion whether the requirements of the Rule are in fact satisfied.

19

defendants have refused. The same considerations that require the denial of the motion to compel a response to the interrogatory as drafted, compel rejection of the motion to compel an alternative interrogatory.

## CONCLUSION

Requiring the defendants to answer the interrogatory will not result in any meaningful conservation of time and effort, and the overall balance of equities plainly disfavors the timing adjustment in disclosure demanded by the plaintiffs. The Relator's Motion to Compel Answer to Interrogatory on Damages is therefore denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 9-15-05