IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, *ex rel.* CLEVELAND TYSON; the STATE OF ILLINOIS, *ex rel.* CLEVELAND TYSON; and THE PEOPLE OF THE STATE OF ILLINOIS,

        Plaintiffs,

v.

AMERIGROUP ILLINOIS, INC. and AMERIGROUP CORPORATION, INC.,

        Defendants.

Case No. 02 C 6074

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

The Defendants Amerigroup Illinois, Inc. and Amerigroup Corporation (hereinafter "Defendants") have moved to dismiss Plaintiff-Relator Tyson's Third Amended Complaint under Federal Rules of Civil Procedure 9(b), 12(b)(1), 12(b)(6), and 12(h)(3). Prior to the filing of the Defendants' motion, the United States (hereinafter, the "United States") filed a Motion to Intervene in this *qui tam* action. For purposes of the present order as it relates to Defendants' motion, the Court concerns itself only with Defendants' Motion to Dismiss for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). The Court also addresses herein the United States' Motion to Intervene. Accordingly, for the reasons stated below, Defendants' Motion to

Dismiss for lack of subject matter jurisdiction is **denied**, and the United States' Motion to Intervene is **granted**.

## I. **DISCUSSION**

### A. **Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Defendants' central argument in support of their motion under Rule 12(b)(1) concerns the inapplicability of the False Claims Act (the "FCA") to the conduct underlying the alleged Medicaid fraud perpetrated by Defendants. On that score, Defendants contend that the allegedly false or fraudulent claims at issue were submitted by Defendants directly to the Illinois Department of Public Aid (the "IDPA"), and not to the federal government. Therefore, those claims were not properly *presented* to an officer or employee of the United States Government, as required by the FCA, and cannot establish the basis for liability under the FCA. For that reason, according to Defendants, there is no actionable federal claim, and thus the Court lacks subject matter jurisdiction over this case.

To bolster their argument, Defendants rely almost exclusively on *United States ex rel. Totten v. Bombardier Corporation*, 380 F.3d 488 (D.C. Cir. 2004). Without commenting on whether *Totten* was correctly decided, the Court finds *Totten* to be inapposite to the present case and declines Defendants' invitation to dismiss this action on *Totten* grounds.

The pertinent sections of the FCA establish liability against any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government. . . .

31 U.S.C. § 3729(a)(1), (2).

Relying on *Totten* for their contention that presentment to the federal government did not occur, Defendants argue that the allegedly false claims certifying compliance with state and federal Medicaid requirements "were presented only to [the IDPA] for payment or approval, and [the IDPA] is not the [United States] Government." (Pl.'s Mem. at 4.) *Totten*, however, does not appear to stand for the proposition that claims must be presented by the alleged tortfeasor *directly* to the federal government in order to be actionable under the FCA. Indeed, both the majority and dissent in *Totten* acknowledge that presentment can occur directly or indirectly, as indicated by the statute itself through its use of the phrase "causes to be presented" in Subsection (a)(1), and "causes to be made or used" in Subsection (a)(2). *See Totten*, 380 F.3d at 499-500 (Roberts, J.); *id.* at 507 n.8 (Garland, J., *dissenting*). Rather, *Totten* held, *inter alia*, that a false claim ultimately must be presented to the federal government (whether directly or via an intermediary) in order for liability to attach, and that presentment is a prerequisite to liability under both Subsections (a)(1) and (a)(2) of the FCA. *Id.* at 499-501.

The court's finding in *Totten* that presentment was made to Amtrak, and not the federal government, was based largely on the fact that false invoices were submitted to, and paid by, Amtrak alone, which received prior funding through a generalized federal subsidy. *Id.* at 491-92. The court rejected Totten's argument that claims submitted to Amtrak were "effectively" presented to the federal government because Amtrak's budget was comprised partly of federal funds. Instead, the court held that liability under the FCA requires that "the Government *provides* the funds to the grantee *upon presentment of a claim* to the Government." *Id.* at 493 (*emphasis* in original).

Medicaid, which is based upon a comprehensive funding and reimbursement structure between the state and federal governments, is different from the federal funding mechanism for Amtrak, a government-sponsored private enterprise. Under Medicaid, the state pays health care providers for services rendered to Medicaid recipients, and it is reimbursed for a significant portion of those funds by the federal government after demonstrating compliance with a number of federal regulations. See 42 C.F.R. §§ 430.0-430.30 (2005). Indeed, several courts have highlighted the substantial role played by the federal government in its funding and enforcement of Medicare and Medicaid programs, and have found frauds upon such programs to fall squarely within the protections of the FCA. See *Peterson v. Weinberger*, 508 F.2d 45, 52 (5th Cir. 1975); *United States v. Catena*, 500 F.2d 1319, 1322 (3d Cir. 1974);

*United States ex rel. Fahner v. Alaska*, 591 F. Supp. 794, 798-99 (N.D. Ill. 1984); *United States v. Jacobson*, 467 F. Supp. 507 (S.D.N.Y. 1979); *United States ex rel. Davis v. Long's Drug, Inc.*, 411 F. Supp. 1144, 1146-7 (S.D. Cal. 1976); *but see United States ex rel. Atkins, M.D. v. McInteer, M.D.*, 345 F. Supp. 2d 1302, 1304 (N.D. Ala. 2004).

Furthermore, Subsection (c) of the FCA, which was added as part of a series of Amendments to the FCA promulgated in 1986, casts significant doubt on Defendants' contention that Medicaid claims fall outside the FCA because they are presented in the first instance to states. That subsection defines a "claim" to include:

> any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729(c).

As the legislative history to the 1986 Amendments indicates, this new language was intended to "reach fraud perpetrated on federal grantees, contractors or other recipients of Federal funds," and applies to "other circumstances where claims are submitted to State, local, or private programs funded in part by the United States where there is significant Federal regulation and involvement." S. Rep. 99-345 at 19-20; *see also ex rel. Davis*, 411 F. Supp. at 1146-47 (noting that "[d]isbursements to state medial

- 5 -

assistance programs through Medicaid are subject to a myriad of federal regulations"). Moreover, Congress itself recognized that claims made under Medicare and Medicaid programs "are not submitted directly to the Federal agency, but rather to private intermediaries," nevertheless, it stated that such claims have been "uniformly held to be within the ambit of the FCA." S. Rep. 99-345 at 19.

Here, as alleged in Plaintiff-Relator's Third Amended Complaint, and noted in the United States' amicus brief, the federal government ultimately approved the purportedly false Medicaid claims processed and submitted to it by the IDPA. Based on those claims, the federal government then reimbursed the State of Illinois by disbursing funds into an account drawn upon by the State of Illinois. (See TAC ¶¶ 51, 59, 61; U.S. Am. Br. at 10-12.) Accordingly, while the IDPA may be acting as an intermediary or administrator of the Medicaid program, the federal government is actively involved in the payment and reimbursement of the claims processed by the state. In this regard, any false or fraudulent claims submitted to the IDPA, in turn, are presented to the federal government for reimbursement, thereby resulting in an impairment or misappropriation of federal funds when those claims are actually paid.

In short, the express language of the FCA, the statutory definition of "claim" and the supporting legislative history make clear that claims submitted to state Medicaid agencies or

intermediaries are considered to be claims presented to the federal government, and thus may give rise to liability under the FCA.

### B. United States' Motion to Intervene

Although the United States declined intervention at the outset of this *qui tam* action, the FCA provides that a court may "permit the government to intervene at a later date upon a showing of good cause." 31 U.S.C. § 3730(c)(3); *see also United States ex rel. Hall v. Schwartzman*, 887 F. Supp. 60, 62 (E.D.N.Y. 1995). In light of new and significant evidence obtained by the relator during discovery, and brought to the attention of the United States subsequent to its original decision declining intervention, the Court finds that good cause exists for the United States to intervene at this time without undue prejudice to the parties or proceeding.

## II. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction is **denied**, and the United States' motion to intervene is **granted**.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　United States District Court

Dated: *October 17, 2005*