IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, STATE OF ILLINOIS, *ex rel.*, and CLEVELAND TYSON | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 02 C 6074 |
| vs. | ) | Judge Leinenweber |
| AMERIGROUP ILLINOIS, INC., and AMERIGROUP CORPORATION, | ) ) ) | Magistrate Judge Cole |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

The Illinois Department of Healthcare and Family Services ("HFS"), has moved to quash a subpoena *duces tecum* served on it by the defendants calling for production of emails of three named HFS employees on the ground that compliance with the subpoena would be unduly burdensome – especially given the fact that HFS is not a party to the case.

I
BACKGROUND

A
The Underlying Complaint

Relator, Cleveland Tyson, filed this *qui tam* suit under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq*. and Illinois Whistleblower Reward and Protection Act ("Illinois Whistleblower Act"). 740 ILCS §§175/1 *et seq*.[1] The FCA establishes civil penalties for any person who files "a false or fraudulent

---

[1] The term, *qui tam*, comes from the Latin expression, *qui tam pro domino rege quam pro se ipso in hac parte sequitur* ("Who brings the action for the King as well as for himself"). *United States*
(continued...)

claim for payment or approval" by the United States government. 31 U.S.C. § 3729(a)(1). The provisions of the IWRPA are similar. 740 ILCS § 175/3. The State of Illinois intervened in the suit on March 2, 2005; the United States was just granted leave to intervene on October 17, 2005.

The second amended complaint alleged that under its contract with the Illinois Department of Public Aid – now known as HFS – Amerigroup Illinois ("AMG-IL") was required to submit quarterly statements certifying that, to its knowledge, there had been no fraud, abuse, or misconduct on the part of its employees, providers, or representatives. The contract defined "abuse" as "a manner of operation that results in excessive or unreasonable costs to the Federal and/or State health care programs." (*Second Amended Complaint*, Ex. A, at 2). The Second Amended Complaint alleges that AMG-IL did not report its limited enrollment practices in its quarterly certifications, which were a precondition to its receiving payment from the federal and state programs involved. This omission allegedly resulted in and constituted false or fraudulent claims for payment in violation of the applicable statutes.

## B
### The Present Discovery Dispute

On July 29, 2005, defendants served a subpoena on HFS, calling for the production of twelve categories of materials. It was the third in a series of substantially similar subpoenas, the first two having

---

[1](...continued)
*ex rel. Mathews v. Bank of Farmington*, 166 F.3d 853, 857 (7th Cir.1999). In a *qui tam* action, a private party, the "relator," brings an action to redress fraud upon the government. *Id.* If the claim is proven, the relator receives a percentage of the recovery ranging, under the current statute, from 10% to 30%. *Id.* at 857-58 (*citing* 31 U.S.C. § 3730(d)). *See Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000). The history of the False Claims Act is detailed in *United States ex rel. S. Prawer and Co. v. Fleet Bank of Maine*, 24 F.3d 320, 324 (1st Cir. 1994). *See also United States ex rel. Williams v. NAC Corp.*, 931 F.2d 1493, 1496-98 (11th Cir. 1991).

been the subject of successful motions to quash by HFS.[2] On August 11, 2005, HFS moved to quash the subpoena as to all but two of the categories – Nos. 5 and 11 – on three grounds: that service was defective under the plain language of Fed.R.Civ.P. 45(b)(1); that the documents sought were not relevant; and that the subpoena was unduly burdensome to a non-party under Fed.R.Civ.P. 45(c)(3)(A)(iv). In the alternative, HFS sought a protective order that no discovery be had aside from discovery bearing on the calculation of damages. Defendants filed their response to HFS's motion on August 18, 2005.

I convened a hearing on this matter on August 23rd and 24th of 2005. In those two sessions, lengthy conferences were conducted in open court, and many of the disputed issues relating to the instant motion, as well as to another discovery dispute, were resolved. In the end, the parties were able to reach a voluntary agreement as to all but two of the document categories, Nos. 6 and 7. The resolution of their dispute as to category No. 6 was held in abeyance at my request. Document category No. 7, which relates to the production of emails of HFS personnel, remains in dispute, and it is the category that is presently the subject of HFS's motion to quash.

The defendants have agreed to limit their request to the emails of Lucille Rendok and Kelly Carter, who are currently HFS employees, and Nelly Ryan, a former employee. In addition, the defendants have agreed that HFS may limit the search terms to be used in retrieving the desired emails to: (1) adverse select*, cherry, pregnan*, trimester, discriminate*, and/or continuity of care; combined with (2) some reference to Amerigroup, such as Amerigroup or AMG. HFS – still unhappy with the request – filed its reply brief on September 14, 2005.

---

[2] The defendants have filed objections to those two prior rulings under Fed.R.Civ.P. 72(a), which are currently pending before Judge Leinenweber.

3

HFS maintains that the current version of the subpoena must still be quashed under Rule 45(c)(3)(A)(iv) because the defendants' request is unduly burdensome, and the emails are irrelevant and unlikely to lead to the discovery of admissible evidence. The defendants' position consists largely of the unadorned conclusion that the burden is not undue and that the emails are critical to proving that HFS had knowledge of the claimed illegality, which HFS insists is at least a *pro tanto* defense to the claimed fraud.

## II
## ANALYSIS

### A
### Undue Burden Within The Meaning Of Rule 45(c)(3)(A)(iv) And The Protections Accorded Non-Parties

Rule 45(c)(3)(A)(iv) mandates that a court "shall quash or modify" a subpoena if it "subjects a person to undue burden." The Advisory Committee's Notes to the 1991 amendments to Rule 45 make clear that the amendments have "enlarge[d] the protections afforded persons who are required to assist the court by giving information or evidence." The rule "requires the court to protect all persons from undue burden imposed by the use of the subpoena power." *Id.* This is not the discretionary language of Rule 26(c), under which a court "may make any order which justice requires to protect a party or person from ... undue burden ...." It is a "command[ ]." *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003).

HFS submits that its system and attendant backup system do not even allow the retrieval of emails for the entire five-year period – 2000 through 2004 – specified in the subpoena. All that is available, according to HFS, is a year's worth of emails. But even that, HFS argues, would constitute an undue burden on it.

As the party objecting to the document request, HFS must demonstrate that the burden of producing the one year's worth of emails is undue. There must be affirmative and compelling proof. *Ipse dixits* will not suffice. *See Trading Technologies Intern., Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2005 WL 1300778, *1 (N.D.Ill. April 28, 2005)(Moran, J.); *Semien v. Life Insurance. Co. of North America*, No. 03 C 4795, 2004 WL 1151608, *1 (N.D.Ill. April 21, 2004)(Kocoras, J.); *In re Sulfuric Acid Antitrust Litigation*, No. 03 C 4576, 2005 WL 2403328, *9 (N.D.Ill. Sept. 27, 2005)(collecting cases). HFS has provided such evidence in the form of the affidavit of a testimonially competent HFS employee. *See* Rule 602, Federal Rules of Evidence.

## B
### The Evidence In Support Of HFS's Motion Suffices To Carry Its Burden Of Proving That Production Of The One Year's Worth Of Emails Should Not Be Required

In support of its contention that the document request is unduly burdensome, HFS has submitted the affidavit of Donald Perry, the chief of its bureau of information systems. (*Motion of Non-Party HFS to Quash a Subpoena for Documents*, Ex. H). Mr. Perry is familiar with HFS's email systems, as well as procedures for backing up email files and restoring old files. (*Id.*, Ex. H, at ¶ 2). The HFS email system comprises 23 post offices residing on specified servers. Each HFS employee is provided with an individual email account in the post office that is appropriate to their location. (*Id.*, Ex. H, at ¶ 3). The post offices are "backed up" incrementally on a daily basis, while a full back up of all the post offices is performed over the weekend. (*Id.*, Ex. H, at ¶ 4). The daily, incremental backup files are retained for one month; the weekly backup files are retained for one year. (*Id.*, Ex. H, at ¶ 5).

Mr. Perry's affidavit explains what would be involved in retrieving the old email files the defendants have requested. In order to restore an employee's email account, one begins with the data range and the

employee's post office. The data range is limited to one year from the current date. Once provided with a data range and post office, HFS's central management service can retrieve the appropriate back up tapes from an off-site storage facility and restore that entire post office to a dedicated server with restricted access. (*Id.*, Ex. H, at ¶ 6). At that point, the individual employee's email messages can be retrieved and analyzed to determine relevance. (*Id.*, Ex. H, at ¶ 7). According to Mr. Perry, however, a post office may only be restored one week at a time; if there are multiple weeks in the data range, the restoration process must be performed in stages. (*Id.*, Ex. H, at ¶ 8). During such a "staged retrieval process," a post office is restored for a period, analyzed, and then deleted to allow the next post office to be restored and analyzed. (*Id.*, Ex. H, at ¶ 9). This stored retrieval process is costly, in terms of expense, equipment, and man-power. (*Id.*, Ex. H, at ¶ 10). For example, a review of one year's worth of an employee's emails would take approximately six weeks. (*Id.*, Ex. H, at ¶ 10).

Significantly, the defendants do not challenge any of Mr. Perry's assertions. This omission, they claimed at oral argument, was the inevitable result of having no familiarity with the internal systems used at HFS. The argument is unpersuasive. The defendants could have sought leave to depose Mr. Perry, and, of course, they could have retained an expert of their own to opine on the validity of Mr. Perry's statements – at least in a general sense. Moreover, Mr. Perry's assessment is confirmed, in the main, by the cases, which have recognized that the task of restoring emails through the use of backup tapes is a "unique burden":

> Backup tapes record a "snapshot" of the contents of the computer system at the moment the backup is run. "The data on a backup tape are not organized for retrieval of individual documents or files, but for wholesale, emergency uploading onto a computer system." In case the system "crashes," and all the information created since the previous backup is lost, the contents of the tape can be loaded onto the system, restoring the lost information.

6

> Since crashes presumably occur infrequently, backup tapes need not be as convenient to access as, say, a CD-ROM. At the same time, backup tapes must have the capacity to store large amounts of information since they are relied upon to replace all the information contained on a computer system after a crash. It is understandable, then, that backup tapes sacrifice accessibility for storage capacity, since to have both would be impractical and costly.

*Hagemeyer North America, Inc. v. Gateway Data Sciences Corp.*, 222 F.R.D. 594, 600 (E.D.Wis. 2004)(Citations omitted).

This is not to say that undue burden may be presumed simply because electronic evidence is involved. *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003). But, in the hierarchy of accessibility, it is clear that electronic data stored on media such as the backup tapes involved here is near the bottom. *Id.* at 319. One of the reasons for the difficulty involved in searching backup tapes is that they store infinitely more information than most other storage media. For example, a CD-ROM's storage capacity is 650 megabytes, the equivalent of 325,000 typewritten pages. Computer networks, on the other hand, create backup data measured in terabytes-1,000,000 megabytes – which is the equivalent of 500 billion typewritten pages. Manual for Complex Litigation (Fourth) § 11.446 (2004) (*cited in Hagemeyer*, 222 F.R.D. at 601).

It is not a decisive answer to say that the defendants have offered pay the costs that might be incurred in retrieving the emails. Expense is but a part of the burden. As Mr. Petty's uncontested affidavit indicates, the process of retrieving the emails also entails the extensive use of equipment and internal manpower. It will take six weeks to restore and review the data of just one of the three individual's email accounts. The entire project, then, will entail eighteen weeks of effort. To be sure, one can imagine the use of three dedicated servers to perform each of the six weeks of restoration work concurrently, but the

end result is still eighteen weeks of man-power and eighteen weeks of use of the necessary equipment. That burden, which is undeniably substantial, exists independently of the monetary costs entailed.

The defendants have dealt with the question of undue burden by essentially ignoring its existence. This mode of dealing with potentially dispositive argument is as "pointless" as is ignoring potentially dispositive authority that is contrary to a party's position. *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987); *Fred A. Smith Lumber Company v. Edidin*, 845 F.2d 750, 753 (7th Cir. 1988). While ignoring the question of burdens, the defendants have not cited not a single case in which a non-party was subjected to the significant burden of restoring electronic data from backup tapes.

## C
### The Significance Of HFS's Non-Party Status

In keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that "non-party status" is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue. *See North Carolina Right to Life, Inc. v. Leake*, – F.R.D. –, 2005 WL 2456982 (D.D.C. Oct. 6, 2005); *Wyoming v. U.S. Dept. of Agriculture*, 208 F.R.D. 449, 452 (D.D.C. 2002); *In re Automotive Refinishing Paint*, 229 F.R.D. 482, 495 (E.D.Pa. 2005). As the First Circuit has explained:

> Although discovery is by definition invasive, parties to a law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs.

*Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)(Emphasis added). Here, the "unique burden" of restoring the email records and the "special weight" to be accorded HFS's non-party status combine to require that the defendants' subpoena be quashed under Rule 45(c)(3)(A)(iv).

Instead of focusing on the pivotal question of undue burden, the defendants attempt to demonstrate how relevant – i.e., how important – the emails are to HFS's possible knowledge and approval of the defendants' alleged fraud under the False Claims Act. According to the defendants, HFS was aware of adverse selection and has allowed it to be a general part of the Medicaid program that it was charged with administering. (*Defendants' Response to Motion of Non-Party HFS*, at 13). As such, the defendants argue that their request for the emails is critical to a "government knowledge" defense under *United States ex rel. Durcholz v. FKW, Inc.*, 189 F.3d 542 (7th Cir. 1999).

There, the Seventh Circuit explained that, in order to prove an FCA violation, a relator must "produce evidence that [the defendant] knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval." *Id.* at 544 (*citing* 31 U.S.C. § 3729(a)(1)). The court described the *mens rea* element as requiring "that the defendant have actual knowledge of (or deliberately ignore or act in reckless disregard of) the truth or falsity of the information presented; no specific intent to defraud is required." 189 F.3d at 544 (Emphasis in original). While the court noted that "[i]nnocent mistakes or negligence are not actionable," it also cautioned that "[w]hat constitutes the offense is not intent to deceive but knowing presentation of a claim that is either fraudulent or simply false." *Id.*

As for the "government knowledge" defense, the court held that: "[i]f the government knows *and approves of* the particulars of a claim for payment before that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim." *Id.* at 545 (Emphasis added). Despite the seeming clarity of the court's opinion, HFS and the defendants have very different interpretations of the opinion and of the elements of the defense. (*Defendants' Response to Motion of Non-Party HFS*, at 13-14; *Reply Brief of the Non-Party HFS to Defendants' Response*, at 3-5). For the defendants,

knowledge, *simpliciter*, is enough. Not surprisingly, HFS contends that there must have been approval by employees who had approval authority, not merely knowledge of what was going on. (*HFS Reply Brief* at 6). For the defendants, this sort of proof is irrelevant since they ignore the approval prong of the Seventh Circuit's opinion.

Of course, it would be improper for me to make a determination about the ultimate merits of the controversy regarding the scope of the government knowledge defense since that issue is before Judge Leinenweber in the context of defendant's motion for summary judgment. But that does not mean that some cursory review is inappropriate for limited purposes. *Compare Von Drake v. National Broadcasting Co., Inc.*, No. 04-CV-0652, 2004 WL 1144142, *2 (N.D.Tex. Mar. 29, 2004)(cursory review to determine whether defendants have substantial arguments for dismissal); *Pacific Lumber Co. v. National Union Fire Insurance. Co. of Pittsburgh, PA*, 220 F.R.D. 349, 352 (N.D.Cal. 2003)(cursory review to determine whether motion will potentially dispose of entire case and whether pending motion can be decided absent additional discovery); *Chrysler Capital Corp. v. Century Power Corp.*, 137 F.R.D. 209, 209-10 (S.D.N.Y.1991)(cursory review to determine whether motion appears to have substantial grounds or does not appear to be without foundation in law); *Aura Lamp & Lighting, Inc. v. International Trading Corp.*, 325 F.3d 903 (7th Cir. 2003); *Price v. Code-Alarm*, 73 Fed.Appx. 159, 161, 2003 WL 21750812 (7th Cir. 2003); (Although a court of appeals lacked jurisdiction to decide the merits of a case over which there was no jurisdiction, it could nevertheless "take a peek" to see whether to transfer the case to the Federal Circuit or dismiss the appeal); *Philips v. Seiter*, 173 F.3d 609, 611 (7th Cir. 1999).

Judge Cudahy was the author of the opinion in *Durcholz*. On the panel were Judges Posner and

Rovner. The Court of Appeals' conjunctive phrasing – "if the government knows *and* approves" – would appear to have been purposeful and intended to signal that mere knowledge alone of illegality would not enable those who defraud the government from being able to draw a conjurer's circle around their illegality and insulate themselves from condign punishment. Any other reading would make the conjunctive phrasing superfluous. The defendants have not paused to analyze the matter in any depth; they have merely quoted the text of the opinion. HFS, relying on the identical language quoted by the defendants, stressed the conjunctive phrasing and, in addition, adverted to the doctrine that prohibits, in most cases, estoppel against the government.

The inappropriateness of my deciding the issue presently before Judge Leinenweber is further underscored by the fact that the Relator and the State of Illinois have not briefed the government knowledge issue in connection with the present motion, involving as it does, a non-party. Consequently, any expression of ultimate opinion on the government knowledge defense would not only be unfair, but would necessarily be uninformed, as parties with a significant interest in the proper resolution of the question have not had an opportunity to express themselves. *Cf. Adamson v. California*, 332 U.S. 45, 59 (1946) (Frankfurter, J., concurring) ("the judicial process [is] at its best" only when there are "comprehensive briefs and powerful arguments on both sides...."); Brandeis, The Living Law, 10 Ill. L. Rev. 461, 470 (1916)("A judge rarely performs his functions adequately unless the case before him is adequately presented.").

On the state of the present record, the following seems beyond debate: the burden on HFS to produce the requested emails is substantial and undue, while the claimed criticality of the emails is anything but certain, given the polar positions on the question by HFS and the defendants and the unresolved nature of the issue of the contours of the government knowledge defense. But even if it be conceded that

the emails are "potentially germane" to the that defense, the significant and undue burden on HFS precludes production. *See Heidelberg Americas*, 333 F.3d at 41. In *Heidelberg*, for example, the First Circuit upheld the district court's quashing of a subpoena to a non-party and, in so doing, noted that:

> some considerable question exists as to how discovery of the materials would lead to admissible evidence. In other words, the documents are not obviously, and perhaps not even reasonably, calculated to lead to other discoverable materials . . . The burden on the non-party . . . , by contrast, appears to be significant.

333 F.3d at 41.

Here, too, the subpoena is significantly burdensome, and there is a question as to the claimed criticality of the emails: When the defendants filed their motion for summary judgment in December 2004, they were obviously satisfied that the evidentiary record they had compiled was sufficiently comprehensive and compelling that there were no disputed issues of material fact on the question of the government knowledge defense. In the intervening eleven months, the defendants have been content to rely on the record submitted to the district court. Yet, in this court, they now insist that the emails are indispensable to the defense that they thought was so straightforward and uncompromising in their favor that they were entitled to judgment as a matter of law under Rule 56. The tension between the current claim in this court that the evidence is so critical that any burden that the non-party HFS must endure is outweighed by the need for the evidence and the position taken in the summary judgment motion is as irreconcilable as it is obvious. In short, while the evidence sought may be relevant, on the present record, the efforts required for its production would be unduly burdensome, especially given HFS's non-party status, and the unresolved issue of the scope of the government knowledge defense.

For the foregoing reasons, the motion of non-party Illinois Department of Healthcare and Family Services to quash the defendants' subpoena [267] as to document category No. 7 is GRANTED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 10/21/05