IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, *ex rel.* CLEVELAND TYSON; the STATE OF ILLINOIS, *ex rel.* CLEVELAND TYSON; and THE PEOPLE OF THE STATE OF ILLINOIS,

        Plaintiffs,

v.

AMERIGROUP ILLINOIS, INC. and AMERIGROUP CORPORATION, INC.,

        Defendants.

Case No. 02 C 6074

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Defendants Amerigroup Illinois, Inc. and Amerigroup Corporation (hereinafter, "Defendants") have moved to dismiss Plaintiffs' Third Amended Complaint (the "TAC") pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), 12(b)(6), and 12(h)(3). Having previously denied the Defendants' Motion as it pertains to Rule 12(b)(1), the Court **denies** the remainder of Defendants' motion for the reasons stated below.

### I. PROCEDURAL HISTORY

On July 7, 2005, when this case was still pending before Judge Coar, Defendants filed their Motion to Dismiss Plaintiffs' Third Amended Complaint. Shortly thereafter, the case was transferred to this Court. At the initial status hearing on September 28, 2005, the parties discussed the prioritization of pending motions,

informing the Court that Defendants' motion to dismiss was fully briefed and awaiting decision. The parties suggested that the Court first rule on Defendants' motion to dismiss for lack of subject-matter jurisdiction and on the United States' motion to intervene.

On October 17, 2005, the Court denied Defendants motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction and granted the United States' motion to intervene. (10/17/05 Mem. Op., Docket #354.) However, the Court's Opinion did not address the three remaining grounds for dismissal raised in Defendants' motion to dismiss. Accordingly, those remaining arguments are addressed herein.

## II. **LEGAL STANDARD**

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all well-pleaded facts and allegations in the complaint, draw all reasonable inferences that favor the plaintiff, and construe the allegations of the complaint in the light most favorable to the plaintiff. *Thompson v. Illinois Dept. of Prof. Reg.*, 300 F.3d 750, 753 (7th Cir. 2002). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004).

## III. DISCUSSION

### A. Written Certifications Pertain Only to "Providers"

Plaintiffs allege that the contracts between Defendants and the Illinois Department of Public Aid (the "IDPA Contracts") required Defendants to provide written certifications disclosing "all allegations of Fraud, Abuse or misconduct of Providers, Beneficiaries." (Pl. Resp. at 14, citing TAC ¶ 44, 49, 53.) Defendants, however, argue that Amerigroup IL's written certifications cannot support Plaintiffs' False Claims Act (the "FCA") claims because the IDPA Contracts require Defendants to report only the fraud, abuse or misconduct of providers, beneficiaries, or department employees. Defendants claim that they are not Providers within the meaning of the IDPA Contracts, and thus any purported fraud, abuse or misconduct on their part did not fall within the reporting requirements. In support of their contractual status as non-Providers, Defendants rely on Section 9.25 of the 2000 IDPA Contract, which states: "The Contractor [Amerigroup IL] is an independent contractor for all purposes under this Contract. The Contractor is not a Provider as defined by the Public Aid Code and the Administrative Rules." (Def. Mem. at 7-8.) This language, according to Defendants, affirmatively disclaims Amerigroup IL's status as a Provider.

Plaintiffs, for their part, contend that Defendants are Providers under the IDPA Contracts. To bolster their argument,

Plaintiffs point out that the Contracts define the term "Provider" as a "Person who is approved by the Department to furnish medical, educational or rehabilitative services to Participants under the Medical Assistance Program." (Pl. Resp. at 14.) Plaintiffs assert that they have alleged in their TAC that the IDPA approved Amerigroup IL to furnish "medical, educational, or rehabilitative services to Participants under the Medical Assistance Program." (*Id.*) Plaintiffs also dispute Defendants' interpretation of Section 9.25. According to Plaintiffs, the term "Provider" in Section 9.25 refers *only* to its given definition under "the Illinois Public Aid Code and the Administrative Rules," not the definition used in the IDPA Contracts. (*Id.*)

The Court is not impressed by Defendants' argument that Plaintiffs' FCA claims fail because the IDPA Contracts, by their own terms, proscribe Amerigroup IL's status as a "Provider" for purposes of the written certifications. The IDPA Contracts define "Provider" as a "Person who is approved by the Department to furnish medical, educational or rehabilitative services to Participants under the Medical Assistance Program," which is what Plaintiffs allege Defendants' status to be. (*See* TAC ¶ 56.) The Court is required to accept Plaintiffs' well-pleaded allegations as true for purposes of Defendants' motion to dismiss, unless those allegations are directly contradicted by unambiguous terms within the IDPA Contract itself. *See Whirlpool Fin. Corp. v. GN Holdings,*

*Inc.*, 873 F. Supp. 111, 123 n.18 (N.D. Ill. 1995)(citing *Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992)).

While Defendants contend that the distinction between "Contractor" and "Provider" contained in Section 9.25 negates those allegations, their reliance on that Section is misplaced. First, Section 9.25 is not definitional, but is intended to emphasize the Contractor's status as an independent contractor, as the title to that Section - "Independent Contractor" - suggests. (TAC Exh. B, § 9.25.) Moreover, the Court agrees with Plaintiffs that under the *expressio unius* cannon of construction, "Provider," as that term is defined within Section 9.25, exclusively refers to its given definitions under the Illinois Public Aid Code and the Administrative Rules, not for purposes of the IDPA Contracts. *See R.L. Coolsaet Const. Co. v. Local 150*, 177 F.3d 648, 659 (7th Cir. 1999)

Other clauses within the IDPA Contracts further support Amerigroup IL's inclusion within the term "Provider," and suggest that the terms "Provider" and "Contractor" were not intended to be mutually exclusive. For example, the "Recitals" state that the Contractor "is operating pursuant to a Certificate of Authority issued by the Illinois Department of Insurance and wishes to provide Covered Services to Eligible Enrollees," and further, that the Contractor "warrants that it is able to provide and/or arrange to provide the Covered Services set forth in this Contract to

Beneficiaries under the terms and conditions set forth herein. . . ." (TAC Exh. B at 1.) This language is consistent with Plaintiffs' allegations noted above, and manifests an intention between the parties that Amerigroup IL falls within the term "Provider" for purposes of the IDPA Contracts.

In addition to the language contained in the Recitals, Section 5.17 lends further support to Plaintiffs' reading of the IDPA Contracts. It states: "The Contractor may provide or arrange to provide any Covered Services . . . with Affiliated Providers or fulfill any other obligations under this Contract by means of subcontractual relationships." (TAC Exh. B § 5.17.) That Section also states that the Contractor "shall remain responsible for the performance of any of its responsibilities delegated to Affiliated Providers or subcontractors," and that "[n]o Provider agreement or subcontract can terminate the legal responsibilities of the Contractor to the Department to assure that all the activities under this Contract will be carried out." (Id.) These provisions undermine Defendants' argument in their reply brief that the IDPA Contracts "consistently distinguish between Amerigroup Illinois from the Providers with which it contracts." (Def. Reply at 10-11.) To the contrary, these provisions indicate that the parties intended for Amerigroup IL to be bound by the obligations contained in the IDPA Contracts, including those pertaining to the written certifications, to the same extent as Providers.

Plaintiffs' allegations relating to Amerigroup IL's status as a Provider under the IDPA Contracts are consistent with the remainder of the contractual provisions. As such, Defendants have not shown that Plaintiffs cannot base their FCA claims on the written certifications as a matter of law.

**B. Fraudulent Inducement Claims**

Defendants make several arguments in response to Plaintiffs' fraudulent inducement allegations. Defendants first contend that Plaintiffs failed to describe those allegations with particularity, as required under Rule 9(b). Defendants also argue that their certifications constitute promises concerning future conduct, which cannot support a fraud claim as a matter of law. Finally, Defendants suggest that the merger clause contained in the IDPA Contracts bars Plaintiffs from claiming that they reasonably relied on Defendants' alleged misrepresentations.

The Court can address the first of these in short order. As Plaintiffs point out, Judge Coar had previously ruled on Defendants' Rule 9(b) argument in denying their motion to dismiss Plaintiffs' Second Amended Complaint. (See 9/2/04 Mem. Op. (Coar, J.), Docket #30.) Defendants claim that the Plaintiffs' fraudulent inducement claims are new. However, they are predicated on the same set of operative facts that Judge Coar previously found met the standard set forth in Rule 9(b), namely, that Defendants purportedly misrepresented to the IDPA that they would not

discriminate on the basis of an enrollee's or prospective enrollee's health status, yet nevertheless intended to do so. (*See id.* (stating that Plaintiffs' complaint addressed the essential Rule 9 questions of who, what, where, and when).) As with the Second Amended Complaint, the TAC fleshes out those allegations with sufficient factual particularity to survive Defendants' motion to dismiss.

In response to Defendants' argument that a promise of future conduct cannot support a fraud claim, Plaintiffs contend that, even if the false representations pertained to future conduct, they were part and parcel of Defendants' scheme to defraud the government and thus fall within the exception to the general rule. The "scheme exception" applies "where one party promises performance in order to induce the other party's reliance, and the other party so relies, but the promisor never intended to keep the promise." *Advent Elec., Inc. v. Buckman*, 918 F. Supp. 260, 264 (N.D. Ill. 1996). In order to invoke the exception, a plaintiff must allege specific, objective manifestations of fraudulent intent. *Am. Diag. Med., Inc. v. Cardiovascular Care Group*, No. 03 C 8929, 2004 WL 1490268, * 2 (N.D. Ill. July 1, 2004)(finding claim for fraudulent inducement where plaintiff alleged that defendant did not intend to abide by its promise to procure insurance, made by defendant to induce plaintiff into executing a contract).

For purposes of the present motion to dismiss, Plaintiffs here have sufficiently pled the "specific, objective manifestations" tending to show that Defendants intended to engage in a scheme to defraud the government. They have alleged, *inter alia*, that Defendants induced the IDPA to execute contracts by "falsely representing that Amerigroup IL would not discriminate on the basis of health status, all the while intending to discriminate in order to strip the Governments of the benefit of their bargain." (TAC ¶ 50.) Indeed, as the Seventh Circuit has recently stated in the context of a False Claims Act suit, "making a promise that one intends not to keep is fraud." *United States of America ex rel. Mail v. Oakland City University*, ___ F.3d ___, 2005 WL 2665600, *2 (7th Cir. Oct. 20, 2005)(holding that the university would be liable under the FCA if it knew about a Department of Education rule barring the university from paying recruiters, but told the Department that it *would comply* nonetheless).

Moreover, the alleged misrepresentations upon which Plaintiffs base their fraudulent inducement claims are not limited to statements concerning future conduct. They also stem from purportedly false statements made previously by Defendants in the form of certifications submitted on a quarterly basis disavowing knowledge of fraud, abuse, or misconduct. (*Id.* ¶ 49.) On that score, Plaintiffs allege those prior false statements "were material, and IDPA would not have executed the 2000 and 2003

Contracts . . . if it had known Amerigroup IL intended to discriminate against pregnant women, or people with substance abuse problems, or HIV, or cancer or others based on health status." (*Id.* ¶ 50.) Given that at least part of Plaintiffs' fraudulent inducement claims are based on misrepresentations as to present or past statements, those claims are sufficient to withstand dismissal. *See Enterprise Warehousing Solutions, Inc. v. Capital One Svcs., Inc.*, No. 01 C 7725, 2002 WL 406976, *6 (N.D. Ill. March 15, 2002).

Finally, Defendants argue that the merger clause contained in the IDPA Contracts bars any alleged misrepresentations made outside of the four corners of the contracts. (Def. Mem. at 9 n.7 (citing *Barille v. Sears Roebuck and Co.*, 682 N.E.2d 118, 123 (Ill. App. 1st Dist. 1997)).) However, Illinois law is clear that "[f]raud, even in the inducement, may justify consideration of prior understandings which would be otherwise excluded under the parole evidence rule." *Tricontinental Indus. Ltd. v. Anixter*, 215 F. Supp. 2d 942, 950 (N.D. Ill. 2002)(citing *Carlile v. Snap-on Tools*, 648 N.E.2d 317, 323 (1995)). *Barille* does not apply here because Plaintiffs have alleged that the IDPA Contracts themselves were induced by fraud. (TAC § 50.) Therefore, the merger clause does not provide an impediment to Plaintiffs' fraudulent inducement claims.

## C. Alter-Ego Liability

Defendants assert that the TAC fails to state a claim for alter-ego liability on the part of Amerigroup Corp. because Plaintiffs have failed to plead facts sufficient to justify piercing the corporate veil. Plaintiffs respond that they have met the minimal notice required under the Federal Rules of Civil Procedure by alleging the operative facts in support of their alter-ego theory.

In order to pierce the corporate veil under Illinois law, a plaintiff must demonstrate a "unity of interest and ownership such that the separate personalities of the corporation and the individual no longer exist," and circumstances such that "adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences." *People of the State of Illinois v. V & M Indus.*, Inc., 700 N.E.2d 746, 750-51 (Ill. App. 1998).

The TAC contains a number of allegations relating to the extent of the unity of interest between Amerigroup IL and Amerigroup Corp., and degree of ownership and control exercised by Amerigroup Corp. over Amerigroup IL. (*See, e.g.*, TAC ¶ 9 ("AMG-Corp has controlled virtually every aspect of AMG-IL's operations." "AMG-Corp controlled AMG-IL's policy for discriminating against certain potential enrollees based on health status. In particular, AMG-Corp executives decided and ordered that AMG-IL should meet the

goal of reducing enrollments of women in their third trimesters of pregnancy. . . .").) Again, these allegations must be accepted as true for purposes of Defendants' motion to dismiss. *Manuf. Life Ins. Co. v. 1 Animation Network, Inc.*, 2005 WL 1323421, *1 (N.D. Ill. May 26, 2005)(Slip Op.).

Plaintiffs are not required to allege the specific factual bases for their alter-ego claim. *Id.* (noting that "the specificity sought by defendants" to justify piercing the corporate veil "is not required under the notice pleading standard"); *see also Liberty Mut. Fire Ins. Co. v. Reimer Exp. Enterprises, Ltd.*, 82 F. Supp. 2d 887, 91-92 (N.D. Ill. 2000). Further discovery may ultimately support or disprove Plaintiffs' allegations, but for present purposes they include the requisite elements to establish an alter-ego relationship between Amerigroup Corp. and Amerigroup IL, and are sufficient to withstand Defendants' Motion to Dismiss.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint is **denied** in its entirety.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: November 8, 2005